IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-01224-PSF-CBS

UNITED STATES OF AMERICA, *ex rel.*
BOBBY MAXWELL,

      Plaintiffs,

v.

KERR-McGEE CHEMICAL WORLDWIDE, LLC, f/k/a Kerr-McGee Operating
Corporation, f/k/a Kerr-McGee Corporation, a Delaware corporation;
KERR-McGEE OIL & GAS CORPORATION, a Delaware corporation;
KERR-McGEE WORLDWIDE CORPORATION, a Delaware corporation; and
KERR-McGEE CORPORATION, f/k/a Kerr-McGee HoldCo, a Delaware corporation,

      Defendants.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION

---

This matter is before the Court on Defendants' Motion for Summary Judgment for Lack of Subject Matter Jurisdiction (Dkt. # 58), filed December 2, 2005. Relator Bobby Maxwell filed his response in opposition on January 10, 2006 (Dkt. # 68), and defendants (collectively, "Kerr-McGee") replied on February 6, 2006 (Dkt. # 82). This Court held a hearing on the motion on Friday, April 28, 2006. Also pending before this Court are two other motions: Kerr-McGee's Motion for Summary Judgment (Dkt. # 92), filed March 22, 2006, and Mr. Maxwell's Unopposed Motion to Seal Brief and Certain Exhibits (Dkt. # 102), filed April 25, 2006.

## I. BACKGROUND

Relator Bobby Maxwell filed his original complaint in this *qui tam* case, arising under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, under seal on June 14, 2004 (Dkt. # 1).  His amended complaint was tendered on September 8, 2004, and accepted on September 13, 2004 (Dkt. # 9).  On January 7, 2005, the United States filed a Notice of Election to Decline Intervention (Dkt. # 15).  Following this notice, this Court ordered the case unsealed except for three documents and ordered service on defendants.  Kerr-McGee filed a motion to dismiss or stay the case on March 14, 2005 on the basis of primary jurisdiction (Dkt. # 25), which was denied by Order of this Court on May 6, 2005.  Defendants filed an answer to the amended complaint on May 16, 2005 (Dkt. # 36), and then amended their answer on July 19, 2005 (Dkt. # 41).

Mr. Maxwell was employed until recently as a senior auditor with the Royalty Management Program of the Minerals Management Service ("MMS"), part of the United States Department of the Interior.  He brings this action to recover monies allegedly owed to the United States arising from one or more of Kerr-McGee's obligations to pay federal oil royalties.  Mr. Maxwell avers that for the period of January 1999 through approximately July 2003 Kerr-McGee

> fail[ed] to properly market or otherwise obtain the fair market value for oil produced from federal lands, including offshore Gulf of Mexico, and fail[ed] to increase the royalty value of said oil to reflect either the value of the marketing services provided by others, or to reflect the fair market value which the Defendants should have received if they had properly discharged their duty to market this oil for the benefit of the United States or if they had otherwise not engaged in

2

misconduct or sold this oil pursuant to arms-length
contracts.

Am. Compl., ¶ 1 at 1-2.

Specifically, Mr. Maxwell alleges that on July 15, 1997, Kerr-McGee Oil & Gas
became subject to a contract with Texon L.P. in which it agreed to exclusively sell all
crude oil it produced from federal land to Texon.  Kerr-McGee allegedly agreed to the
sale of the oil at far below fair market price in exchange for Texon bearing its marketing
expenses.  Mr. Maxwell contends that Kerr-McGee reported the sales value of the oil
for royalty purposes and paid the royalties accordingly, without "grossing up" the actual
sales proceeds to reflect the fair market value of the oil and the value of the marketing
services provided by Texon.  *See e.g. id.*, ¶¶ 42-48 at 13-14.

The MMS began investigating Kerr-McGee's royalty reporting in 2002.  Mr.
Maxwell was the senior auditor assigned to the audit.  In the course of his investigation,
he "reached the conclusion that Kerr-McGee had substantially underpaid its federal oil
royalties because Kerr-McGee accepted less than market price in exchange for Texon
incurring the expense of marketing the crude oil."  *Id.*, ¶ 56 at 15-16.  He authored a
letter and subsequent Orders to Report and Pay Additional Royalties to Kerr-McGee
demanding payment of $10 million for the unpaid royalties.  *Id.*, ¶¶ 58-61 at 16. Kerr-
McGee did not pay as requested.

In his Amended Complaint, Mr. Maxwell asserts that the unpaid federal oil
royalties are now worth an estimated $12 million.  *Id.*, ¶ 62 at 17.  He seeks all relief
entitled the United States and him from Kerr-McGee under the FCA.

3

## II. MOTION FOR SUMMARY JUDGMENT

### A. Applicable Legal Standards

The burden to show jurisdiction is on the party claiming it.  *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). However, where a jurisdictional challenge arises out of the same statute creating the same substantive claim, as here, the jurisdictional inquiry is intertwined with the merits and resolved under F.R.Civ.P. 56.  *See United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1543 (10th Cir. 1996).  Thus, judgment shall be entered for the defendants as the moving parties if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F.R.Civ.P. 56(c).

Federal courts being courts of limited jurisdiction, jurisdiction is presumed not to exist absent a showing by the party seeking to invoke federal jurisdiction.  *MK-Ferguson*, 99 F.3d at 1543 (10th Cir. 1996).  Further, statutes conferring such jurisdiction are to be strictly construed.  *Id.* at 1543-44.  Mr. Maxwell thus bears the burden of presenting facts and evidence sufficient to support jurisdiction.

Under the FCA, 31 U.S.C. § 3730(b) sets out the requirements for *qui tam* suits by individuals on their own behalf and on behalf of the United States.  A four-step inquiry under § 3730(e)(4) is necessary in order for a federal court to exercise jurisdiction over such a suit.  First, was there a public disclosure of the allegations or transactions at issue from one of the listed sources in the statute?  Second, was the

4

alleged disclosure made "public" within the meaning of the FCA?  Third, was the

relator's complaint "based upon" this public disclosure?  If any one of these inquires is

answered in the negative, jurisdiction is satisfied and the suit may proceed without

analysis of the fourth step.  However, if all questions are answered affirmatively, the

suit is barred unless the fourth step is met:  the relator qualifies as an "original source."

*See United States ex rel. Hafter v. Spectrum Emergency Care*, 190 F.3d 1156, 1161.

Kerr-McGee's motion for summary judgment on jurisdictional grounds sets forth

two reasons for dismissing this case.  First, it argues that Mr. Maxwell "cannot serve as

a relator because he is a former government auditor who supervised the very same

audit of Kerr-McGee that serves as the basis of his Amended Complaint in this case."

Defs.' Br. Supp. S.J. at 1.  Second, the case "is premised upon public disclosures and

Maxwell, as a government auditor charged to audit Kerr-McGee, cannot be an 'original

source' under the FCA."  *Id.* at 2.

### B.  Can Mr. Maxwell Act as a Relator Under the FCA?

The Tenth Circuit's opinion in *United States ex rel. Holmes v. Consumer Ins.*

*Group*, 318 F.3d 1199 (10th Cir. 2003) suggests that Mr. Maxwell is not barred from

acting as a relator under the FCA.  *Holmes* specifically rejected the notion that the FCA

bars certain people–*i.e.*, government employees–from inclusion in its term "person"

when describing who may bring a *qui tam* action.  Although *Holmes* did not address the

specific situation of a government auditor, as opposed to a government employee

working in another job capacity, the opinion specifically contemplated that the plaintiff

was obligated as part of her job duties to report fraud and procedural irregularities.

"The fact that an employee learns of fraud in the course of his or her employment and has a duty to report fraud does not bar the government employee's FCA action." *Id.* at 1204.  The opinion does not appear to turn on the fact that Ms. Holmes, a postmaster, did not have as her primary job duty the investigation of fraud as Mr. Maxwell did, contrary to the distinction attempted to be drawn by defendants.

 *Holmes* recognizes that public policy concerns may support a different outcome, but notes that "nothing in the FCA expressly precludes federal employees from filing *qui tam* suits." *Id.* at 1212.  This would also include any bar against government auditors such as Mr. Maxwell.  *Holmes* concludes that "[a]lthough there may be sound public policy reasons for limiting government employees' ability to file *qui tam* actions, that is Congress' prerogative, not ours." *Id.* at 1214.

 Under the controlling *en banc* decision of *Holmes*, Kerr-McGee's argument that Mr. Maxwell cannot serve as a relator in a *qui tam* suit is without merit.  A government employee who obtains information about fraud in the scope of his or her employment and who is required to report that fraud is a "person" for FCA purposes under 31 U.S.C. § 3730(b)(1).  *Id.*  *Holmes* gives no indication that the distinction between Ms. Holmes and Mr. Maxwell asserted by defendants is legally relevant.  *See* Tr. 8:8-12:11.

 Further, the conflict of interest issue discussed in *Holmes* does not bar Mr. Maxwell from serving as a relator in this case.  *Holmes* "noted the possibility that federal conflict-of-interest laws might be implicated by a government employee filing a *qui tam* action based upon information obtained in the course of his or her employment. In particular, the possibility was mentioned that such an employee might have to forfeit

all or part of the recovery obtained . . . ." 318 F.3d at 1214 n.11.  However, because

the issue was not raised by the government, which intervened in that case, nor briefed

by the parties, the court found it "unnecessary to resolve the issue."  *Id.*  Here, not only

has the government chosen not to intervene, but any conflict of interest by Mr. Maxwell

that may affect his recovery comes only between the government and Mr. Maxwell.

Such an alleged conflict does not affect his status as a "person" under the FCA nor

does it deprive this Court of jurisdiction.  Although the Court recognizes that a

government auditor acting as a *qui tam* relator for personal gain based upon knowledge

obtained through his government duties may be undesirable as a matter of policy, such

a dual role is not foreclosed under the language of the FCA or Tenth Circuit precedent.

Possible reformation of the existing statutory scheme based on the policy

considerations advanced by Kerr-McGee (*see* Defs.' Br. Supp. S.J. at 2) is a legislative

issue, not one for the courts.

### C.  Is Mr. Maxwell's Case Based Upon Public Disclosures?

Under § 3730(e)(4)(A), "[n]o court shall have jurisdiction over [a *qui tam*] action

. . . based upon the public disclosure of allegations or transactions in a criminal, civil, or

administrative hearing, in a congressional, administrative, or Government Accounting

Office report, hearing, audit, or investigation, or from the news media, unless the action

is brought by . . . an original source of the information."  The first alleged public

disclosure in this case is an email exchange between David Darouse, an employee of

the State of Louisiana, and Roman Geissel, an MMS agent.  Mr. Darouse requested a

copy of the Kerr-McGee/Texon contract for the period from August 1995 through

December 2001, and stated that "[w]e analyzed the prices being paid by Texon to Kerr and found them to be FAR below gravity adjusted market indices." Darouse Email, attached as Ex. C. to Defs.' Br. Supp. S.J. (emphasis in original). Mr. Geissel's email in reply, dated April 2, 2003, noted that "[w]e have done a lot of work at Kerr and found numerous problems which will result in a significant underpayment." *Id.*

According to the Tenth Circuit, "public disclosure occurs when the allegations or fraudulent transactions upon which the *qui tam* suit is based are affirmatively disclosed to members of the public who are otherwise strangers to the fraud." *MK-Ferguson Co.*, 99 F.3d at 1545 (citing *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1520-21 (10th Cir. 1996)). In *MK-Ferguson*, a Department of Energy report and audit sent to the State of Oregon without any restrictions on its dissemination qualified as a public disclosure. The Court found that "Oregon was not a party to the questioned contracts and projects. Oregon was thus a stranger to the fraud like any other member of the public." *Id.* at 1545.

Defendants argue that the same scenario exists here: MMS auditors (Mr. Geissel) disclosed information to Louisiana (Mr. Darouse) "clearly indicating the direction and findings of its audit." Defs.' Br. Supp. S.J. at 16. According to Kerr-McGee, Louisiana was not a party to the questioned contracts, and Darouse and Louisiana were both strangers to the fraud.

Mr. Maxwell, however, contends that the email exchange was not a public disclosure because Mr. Darouse was an agent of MMS.[1]  *See* Darouse Dep. at 17:21-19:17, attached as Ex. 5 to Pl.'s Resp (explaining that as a Louisiana state auditor, Mr. Darouse also sometimes by contract conducts audits for the MMS at its direction and the state is reimbursed for his salary by MMS).  Communications from one federal agent to another do not constitute a public disclosure.  *See Ramseyer*, 90 F.3d at 1521 n.4 (citing *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1419 (9th Cir. 1991)).  Further, in attempting to distinguish the facts of this case from *MK-Ferguson*, the relator claims that communications between federal agents are subject to "an express and well understood duty of confidentiality."  Pl.'s Resp. at 27.  Mr. Maxwell also argues that Mr. Darouse had "essentially completed his investigation of the Kerr-McGee/Texon contract and had reached the conclusion that Kerr-McGee was underpaying its royalties."  *Id.* at 23; *see also Ramseyer*, 90 F.3d at 1521 ("public disclosure occurs only when the allegations or fraudulent transactions are affirmatively provided to others *not previously informed thereof*") (emphasis added).  Thus it is argued by relator that Mr. Geissel could not have been revealing alleged Kerr-McGee wrongdoing to Mr. Darouse that Mr. Darouse did not already know through his own investigation, regardless of whether he could be considered a federal agent.

---

[1]Mr. Maxwell in his briefing and oral argument never raised the argument that the email is arguably not a listed source under § 3730(e)(4)(A), as it was not a "report, hearing, audit, or investigation" but merely an email response providing the requested information.  As in *Ramseyer*, such an argument is acknowledged but not addressed here as it has been waived by the relator.  *See Ramseyer*, 90 F.3d at 1518 n.2.

The public disclosure issue, however, need not be decided in light of the original source discussion in part II.D, *infra*. Although the Tenth Circuit has advised that courts "should address the first three public disclosure issues first" before turning to the original source analysis, *see Hafter*, 190 F.3d at 1161, here it makes no difference to the outcome whether or not a public disclosure occurred and served as the basis for the *qui tam* suit. Thus, the Court presumes without deciding that a public disclosure by way of the email exchange has occurred and been relied upon. *See also United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992) (describing the threshold analysis of whether a suit is "based upon" a public disclosure to be a "quick trigger for the more exacting original source analysis"). Because the Court now proceeds to the original source analysis, examination of other claimed public disclosures–prior litigation and information in the public domain–is also unnecessary.

**D.  Is Mr. Maxwell an Original Source?**

To qualify as an original source, Mr. Maxwell must have "direct and independent knowledge of the information on which the allegations are based and ha[ve] voluntarily provided the information to the Government before filing an action." *MK-Ferguson*, 99 F.3d at 1547; 31 U.S.C. § 3730(e)(4)(B). Direct and independent knowledge is knowledge that is "marked by the absence of an intervening agency" and "unmediated by anything but the relator's own labor." *MK-Ferguson*, 99 F.3d at 1547; *Hafter*, 190 F.3d at 1162. In *MK-Ferguson*, an audit supervisor who did not actually perform the investigative audit work did not qualify as an original source. 99 F.3d at 1547-48.

Defendants argue that Mr. Maxwell cannot be an original source because his information was "derivative of the facts uncovered by the field auditors." Defs.' Br.

Supp. S.J. at 22 (quoting *MK-Ferguson*, 99 F.3d at 1548).  Further, he could not

"voluntarily" provide the information to the government because it was his job and duty

as a federal auditor to uncover Kerr-McGee's alleged underpayment.   *Id*.

Mr. Maxwell offers evidence that he "was directly involved in the hands-on

investigation" and that he "established and designed the audit, made specific document

requests and was the first to analyze the Kerr-McGee documents."  Pl.'s Resp. at 37;

*see also* Pl.'s Resp. at 8-10 (Relator's Statement of Material Facts); Darouse Dep. at

17:6-19.  Further, he contends that he "initially compared the Texon sales prices with

comparable sales and discovered a 'vast difference' [and] first discovered the 'smoking

gun' Kerr-McGee internal memorandums which evidenced the additional consideration

Texon was providing Kerr-McGee."  Pl.'s Resp. at 37; *see also* Maxwell Aff. at ¶¶ 8-11,

attached as Ex. 8 to Pl.'s Resp.  Defendants do not dispute these specific assertions,

but rather present evidence that Maxwell was often not on site, had other auditors

doing the actual auditing work, and thus cannot be said to have "direct and

independent knowledge."

The evidence taken as a whole shows that Mr. Maxwell played a much larger

role than did Mr. Fine in *MK-Ferguson* in actually ferreting out the alleged fraud.

Although the additional people who conducted work along with and under the guidance

of Mr. Maxwell might also qualify as original sources, that does not appear to disqualify

Mr. Maxwell.  *See* 31 U.S.C. § 3730(e)(4)(A) (describing "*an* original source")

(emphasis added); *see also* Tr. 8:1-6 and 15:3-7 (admitting that Mr. Maxwell

participated in and scrutinized the very facts and circumstances which are at issue as

well as worked on an extensive analysis along with a number of people from MMS to

11

analyze relevant documents); 65:19-67:5.  Although controlling case law does not provide complete guidance as to where to draw a line between the participation of Mr. Maxwell here and Mr. Fine in *MK-Ferguson*, the Court finds that Mr. Maxwell has presented sufficient evidence to show that he was actively involved in the audit and in drawing the conclusions, unlike Mr. Fine, who relied on the work completed and conclusions made by others.  *See MK-Ferguson*, 99 F.3d at 1548 (Mr. Fine admits that his contribution to the audit "was limited to taking the facts presented by [an independent firm conducing the audit] and writing the report in layman's language").

Further, as cited above, Mr. Maxwell has provided specific facts through depositions and affidavits to establish his participation.  He goes beyond mere allegations in showing his critical role in obtaining the dispositive information and uncovering the alleged fraud.  *See Hafter*, 190 F.3d at 1162 (a *qui tam* plaintiff establishes original source status by "alleg[ing] specific facts–as opposed to mere conclusions–showing exactly how and when he or she obtained direct and independent knowledge").

Mr. Maxwell must also show that he voluntarily provided the information he discovered to the government prior to filing suit.  Defendants argue that he could not have voluntarily provided any information to the government where it was also his duty to do so as part of his job.  Mr. Maxwell contends that he met the voluntary disclosure requirement through his prefiling disclosure to the government in his role as a private person, not as a federal employee.  *See* Prefiling Disclosure, attached as Ex. 19 to Pl.'s Resp.

The Tenth Circuit in *Holmes* specifically contemplated such a dual role, noting that "even though [Ms. Holmes] may have been acting 'as the government,' *i.e.*, in her official capacity, when she obtained the information that now forms the basis of her qui tam complaint, it is apparent that she is acting as a 'person,' *i.e.*, in her individual capacity, in filing and pursuing this qui tam action." *Holmes*, 318 F.3d at 1210. Such logic can extend to Mr. Maxwell's prefiling disclosure as well, which was not part of his job duties but rather part of his requirement as a citizen in filing a *qui tam* suit.

A recent Supreme Court case further supports this distinction. In *Garcetti v. Ceballos*, 126 S. Ct. 1951, 2006 WL 1458026 (May 30, 2006), the Supreme Court, in the context of First Amendment protection for government employee speech, drew an important distinction between an employee's expressions made concerning his employment that are pursuant to official duties and those that are not. In making this distinction, the Supreme Court recognized that "a citizen who works for the government is nonetheless a citizen." *Id.* at *6. The government employee who "went to work and performed the tasks he was paid to perform . . . acted as a government employee." *Id.* at *8.

Here, Mr. Maxwell was not performing a task he was paid to perform when he provided his prefiling disclosure to the government. *See also Holmes*, 318 F.3d at 1210 (Holmes could not be acting "'as the government' since she was not employed to file suit under the FCA"). Rather, Mr. Maxwell was acting as a citizen in voluntarily telling the government, also his employer, that he intended to use the information he obtained to file this *qui tam* suit.

13

Mr. Maxwell has thus presented sufficient evidence to meet the jurisdictional requirements for filing this *qui tam* suit.  As previously stated, there well may be valid policy reasons for not allowing someone in Mr. Maxwell's position to pursue such a claim.  Nonetheless, the relator here meets the statutory jurisdictional requirements, and, in serving as a relator, serves the two principal goals of the FCA: (1) a citizen with first hand knowledge has exposed potential fraud, and (2) parasitic lawsuits have been avoided, as Mr. Maxwell first attempted to get the government to address the fraud, both through his official job duties and his prefiling disclosure.  *See Ramseyer*, 90 F.3d at 1519-20 (explaining the twin purposes of the FCA).

## III.  MOTION TO SEAL

The relator wishes to file eleven exhibits along with his response to defendants' second motion for summary judgment that have been "designated as confidential." Pl.'s Mot. Seal at 1.  Because the response brief addresses those confidential exhibits, he seeks to file it as well as the exhibits under seal.  As reason for the confidentiality, Mr. Maxwell offers only that "[c]ompelling reasons exist" and that "[s]ealing is necessary to prevent disclosure to the public of this confidential information." *Id.* at 2.  This presentation is insufficient to justify sealing the requested documents in a public court. Further, a review of the documents themselves does not reveal to this Court, in the absence of information as to why they should remain confidential, any justification for filing them under seal.  The motion is denied without prejudice.

## IV.  SECOND MOTION FOR SUMMARY JUDGMENT

Kerr-McGee has filed a second motion for summary judgment claiming that Mr. Maxwell cannot prove the required elements for a reverse false claim.  This motion

is now fully briefed.  Oral argument shall be held on this motion before this Court on

Monday July 31, 2006 at 11:00 a.m.

## V.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment for

Lack of Subject Matter Jurisdiction (Dkt. # 58) is DENIED.  Relator's Unopposed Motion

to Seal (Dkt. # 102) is DENIED without prejudice.  Defendants' Motion for Summary

Judgment (Dkt. # 92) is SET FOR HEARING on **Monday July 31, 2006 at 11:00 a.m.**

DATED: June 9, 2006.

BY THE COURT:


*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge