IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01224-PSF-CBS

UNITED STATES OF AMERICA,
*ex rel.* BOBBY L. MAXWELL,

      Plaintiff,

v.

KERR-McGEE CHEMICAL WORLDWIDE, LLC,
f/k/a KERR-McGEE OPERATING CORPORATION,
f/k/a KERR-McGEE CORPORATION,
a Delaware corporation;
KERR Mc-GEE OIL & GAS CORPORATION,
a Delaware corporation;
KERR-McGEE WORLDWIDE CORPORATION,
a Delaware corporation;
KERR-Mc-GEE CORPORATION
f/k/a KERR-Mc-GEE HOLDCO, a Delaware corporation;

      Defendants.

---

**ORDER ON DEFENDANTS' MOTION TO STRIKE CERTAIN EXPERT
EVIDENCE PROFFERED BY BOBBY L. MAXWELL**

---

Magistrate Judge Craig B. Shaffer

      THIS MATTER comes before the court on Defendants' (collectively referred to hereafter

as "Kerr-McGee") Motion to Strike Certain Expert Evidence Proffered by Bobby L. Maxwell,

(Document #91), filed on March 22, 2006.  Kerr-McGee seeks to preclude: (1) Maxwell's

anticipated expert testimony on issues of law; (2) Maxwell's damages calculations for nine of

fifty-seven leases at issue in this case; and (3) any expert or other testimony derived from

1

confidential MMS information to which Kerr-McGee has not been provided access. *See* Defendants' Motion to Strike, at 9. Relator Maxwell filed his Response to Defendants' Motion to Strike on April 21, 2006. Kerr-McGee filed a Reply in Support of Motion to Strike on May 8, 2006.

Pursuant to an Order of Reference dated March 22, 2006, the Motion to Strike was referred to the Magistrate Judge. I heard oral argument on the pending motion on May 15, 2006. The court has thoroughly reviewed the parties' briefs and attached exhibits, the expert report prepared by Maxwell, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, Kerr-McGee's Motion to Strike is denied at this time.

## FACTUAL BACKGROUND

Bobby Maxwell, a senior auditor with the Royalty Management Program of the Minerals Management Service ("MMS"), a branch of the United States Department of the Interior, brought this action under the False Claims Act, 31 U.S.C. § 3729, *et seq,* alleging that Kerr-McGee underpaid royalties owed to the United States by failing to properly market oil produced from government property. According to Maxwell, Kerr-McGee entered into a contract with Texon, L.P. to sell substantial quantities of federal crude oil at rates significantly below established market prices, known as index prices. Maxwell claims that Defendants failed to discharge their duty to market the oil, "failed to gross up the sale proceeds or otherwise failed to ensure the federal royalties were based on at least the fair market value of the oil. *See* Scheduling Order, dated May 18, 2005, at 2-3. The Relator estimates that the amount of unpaid oil royalties is approximately $12,000,000. *Id.* at 4. Defendants emphatically deny these allegations and insist that they have calculated all royalty payments in accordance with MMS regulations and standards.

*Id.* at 5.

On November 9, 2005, the court entered a Scheduling Order that established December 21, 2005, as the deadline for Rule 26(a)(2) affirmative expert disclosures and February 13, 2006, as the deadline for Rule 26(a)(2) rebuttal expert disclosures. On December 17, 2005, Maxwell produced his Expert Report on Royalty Underpayments to Mineral Management Service by Kerr-McGee Corporation. On March 22, 2006, Kerr-McGee filed the instant Motion to Strike certain opinions presented in Mr. Maxwell's report.

Also on March 22, 2006, Defendants filed a Motion for Summary Judgment (Document #92) and supporting Brief (Document #93). In moving for summary judgment, Kerr-McGee contends that Maxwell "cannot prove the required elements for a reverse false claim: (1) use of a false statement; to (2) knowingly avoid; (3) a legal obligation to the government." *See* Brief in Support of Motion for Summary Judgment, at 2. On April 26, 2006, Maxwell filed his Brief in Opposition to Kerr-McGee's Motion for Summary Judgment, and attached copies of his Affidavit and Expert Report, designated as Exhibits One and Eight, respectively. A hearing on Kerr-McGee's Motion for Summary Judgment is set for July 31, 2006, at 11:00 a.m., before District Judge Phillip S. Figa.

## ANALYSIS

Rule 104 of the Federal Rules of Evidence provides that preliminary questions concerning the qualifications of a person to be a witness or the admissibility of evidence shall be determined by the court. In the context of expert testimony, the trial court's preliminary assessment must consider "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue."

*See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 imposes two requirements on the admissibility of expert testimony. First, the expert must be qualified by specialized knowledge, skill, experience, training or education to testify on the subject matter of his or her testimony. Kerr-McGee's Motion to Strike does not challenge Maxwell's qualifications. Second, the testimony must concern "scientific, technical or other specialized knowledge" that assists the trier of fact to understand the evidence or determine a fact in issue. The district court performs an important gatekeeping function in assuring that both of these prerequisites are satisfied. *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).

The proponent of expert opinion testimony has the burden of establishing the admissibility of those opinions under Rule 702. *In re Breast Implant Litigation*, 11 F. Supp.2d 1217, 1222 (D. Colo. 1998). *See also Oddi v. Ford Motors Co.*, 234 F.3d 136, 144 (3rd Cir. 2000) (proponent of expert testimony must satisfy Rule 702 requirements by preponderance of proof). The court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997).

Apart from the pending Motion to Strike, Maxwell's expert report is attached to and cited at several places in the Relator's Brief in Opposition to Defendants' Motion for Summary Judgment. "Under Fed.R.Civ.P. 56(c), summary judgment is only appropriate if the pleadings and

*admissible* evidence produced during discovery, together with any affidavits, show that 'there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.'" *Western Diversified Services, Inc. v. Hyundai Motor*, 427 F.3d 1269, 1272 (10th

Cir. 2005) (emphasis added). The moving party bears the initial burden of showing that there is

an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991). If the moving party meets this

burden, the non-moving party may not rest upon its pleadings, but must come forward with

specific facts showing that there is a genuine issue for trial as to the elements essential to the non-

moving party's case. *See* Fed. R. Civ. P. 56(e). To sustain his burden under Rule 56, Maxwell's

proffered material must satisfy the requirements of the Federal Rules of Evidence so as to be

admissible at trial. *Northlake Marketing & Supply, Inc.  v. Glaverbel, S.A.*, 861 F. Supp. 653,

656 (N.D Ill. 1994). *Cf. Maier-Schule GMC, Inc. v. General Motors Corp.*, 154 F.R.D. 47, 59

(W.D.N.Y. 1994) (holding that a non-moving party may not rely on inadmissible evidence to

avoid summary judgment).

A.     *Maxwell's Legal Opinions*

Kerr-McGee contends that Maxwell's expert report and anticipated trial testimony contain

legal conclusions. *See* Defendants' Motion to Strike, at 3. Kerr-McGee argues that "to permit

Maxwell – who is both a party-in-interest and [] his own designated expert[1]– to explain the MMS

Regulations and 'opine' that Kerr-McGee violated them --impermissibly usurps the role of the

Court." *Id.* at 3. Therefore,  Kerr-McGee asks this court to strike Maxwell's proffered opinions

---

[1]The fact that Maxwell is an expert witness and has a financial stake in this case, does not in any manner disqualify
him as an expert in this case. *See Tagatz v. Marquette University*, 861 F.2d 1040, 1042 (7th Cir. 1988).

on issues of law. *Id.* at 9.

Expert legal testimony that "articulates and applies the relevant law . . . circumvents the jury's decision making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The Tenth Circuit has cautioned that "[i]n no instance can a witness be permitted to define the law of the case." *Id.* at 809-10. As another court noted in the context of a *qui tam* action, "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law . . . [W]hile an expert may provide an opinion to help a judge or jury understand a particular fact, 'he may not give testimony stating ultimate legal conclusions based on those facts.'" *Klaczak v. Consolidated Medical Transport Inc.*, 2005 WL 1564981, * 3 (N.D. Ill. 2005), quoting *In re Initial Public Offering Securities Litigation*, 174 F. Supp.2d 61, 64 (S.D.N.Y. 2001).

Rule 704(a) of the Federal Rules of Evidence allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact. *A.E., By and Through Evans v. Independent School Dist. No. 25,* 936 F.2d 472, 476 (10th Cir.1991). *See also United States v. Oles*, 994 F.2d 1519, 1523 (10th Cir.1993) (an expert witness "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible"). However, the expert may not state legal conclusions drawn by applying the law to the facts. *Lewis v. New Mexico Department of Health*, 275 F. Supp.2d 1319, 1331 (D. N. M. 2003). *Cf. Kuehl v. Wal-Mart Stores, Inc.*, 909 F. Supp. 794, 804 n. 2 (D. Colo. 1995) (held that plaintiff had improperly used her expert's report to offer an opinion on the ultimate issue of law that defendants violated the Americans with Disabilities Act).

Measured against the foregoing standards, Maxwell's expert report includes opinions that

may well be improper under Rule 702 and prevailing case law:

- "Federal regulations specifically required that the values of the services provided by Texon be added to the sales vales [sic] for reporting and paying Federal royalty;"

- "Kerr-McGee breached its duty to market federal offshore crude oil;"

- "Kerr-McGee clearly did not fulfill [its] legal obligation" to reasonably market the federal oil; and

- "Kerr-McGee clearly violated Federal regulations."

*See* Maxwell Expert Report, at 3, 5, and 8, attached as Exhibit B to Defendants' Motion to Strike.

Notably, in support of its Motion for Summary Judgment, Kerr-McGee proffered the "undisputed material fact" that "Maxwell does not 'have any reason to believe'" that information on Defendants' monthly reports to MMS was inaccurate. *See* Defendants' Brief in Support of Motion for Summary Judgment, at 3. In responding to Defendants' "material facts," the Relator insists that Kerr-McGee's monthly reports "were inaccurate because they failed to 'gross up' the royalty value either to represent the market value of the oil or to reflect the value of the other consideration Kerr McGee received from Texon." *See* Relator's Response to the Motion for Summary Judgment, at 20. Maxwell's expert report is the only evidence cited by the Relator to suggest a genuine issue of material fact on this point. Kerr-McGee's Reply brief makes this same point, arguing that the Relator's attack on the accuracy of Kerr-McGee's monthly statements and his claim that Kerr-McGee made false statements to MMS are supported only by Maxwell's own experts' reports. *See* Defendants' Reply in Support of Their Motion for Summary Judgment, at 6. Stated otherwise, Defendants' Reply brief implies that if Maxwell's "legal opinions" are

rejected, there is no evidence that Kerr-McGee made a false statement and, therefore, the Relator

has failed to create a genuine material fact dispute as to an essential element of his claim.

Defendants have challenged Maxwell's "legal opinions" both in their Motion to Strike and

in their Reply in support of the pending Motion for Summary Judgment.  Only the former motion

has been referred to this court, thus creating the possibility of inconsistent judicial determinations.

Under the circumstances, Kerr-McGee's challenge to the admissibility of these "legal" opinions is

more properly addressed by the District Court in the context of the summary judgment motion.

*Cf. Raskin v. Wyatt Co*, 125 F.3d 55, 66 (2d Cir. 1997) (recognizing that the resolution of

evidentiary questions on summary judgment conserves the resources of the parties, the court and

the jury); *Washington v. Armstrong World Industries, Inc*., 839 F.2d 1121, 1123 (5th Cir. 1988)

("[[i]n considering a Rule 56 motion opposed by expert testimony, the trial court has broad

discretion to rule on the admissibility of the expert's evidence").  The District Court is free to

disregard any inadmissible portions of Maxwell's expert report in deciding the Motion for

Summary Judgment.  *See City of Chanute, Kansas v. Williams Gas Co.*, 743 F. Supp. 1437, 1445

n. 4 (D. Kan. 1990), citing *United States v. Alessi*, 599 F.2d 513, 514-15 (2d Cir. 1979).  *See also*

*Disability Law Ctr. v. Millcreek Health Center*, 339 F. Supp.2d 1280, 1284 (D. Utah 2004)

(declining to rely on any impermissible legal opinions set forth in the parties' declarations or

affidavits).

Kerr-McGee's Motion to Strike unnecessarily clutters the record by duplicating, to some

extent, issues raised in the summary judgment briefing.  *Cf. Clegg v. The Sullivan Corp.*, 2003

WL 21254558, * 1 (S.D. Ind. 2003) (holding that defendant's motion to strike was an

unnecessary vehicle to address the admissibility of expert opinions, given defendant's pending

motion for summary judgment).  *See also Yong-Quin Sun v. Board of Trustees*, 429 F. Supp.2d

1002, 1030   (C.D Ill. 2006) (noting that motions to strike are disfavored, indicating a practice of

denying motions to strike when ruling on motions for summary judgment); *Allen v. Baxter Int'l*

*Inc*., 2006 WL 560608, * 1 n.1 (N.D. Ill. 2006) (in denying defendants' motion to strike, noted

that defendants should have incorporated their arguments in a reply brief in support of summary

judgment, instead of filing a separate motion; characterized defendants' motion to strike as

"unnecessary clutter").  If Kerr-McGee's challenge to Maxwell's "legal" opinions is not decided

in the context of the Motion for Summary Judgment, Defendants may move again to strike, if

appropriate, at a later stage of the proceedings.  At this time, Kerr-McGee's motion to preclude

Maxwell's anticipated "legal opinions" is denied without prejudice.

B.      ***Maxwell's Damage Calculation for Nine of the Fifty-Seven Leases***

        Kerr-McGee contends that Maxwell's expert damage calculations for nine of the fifty-

seven leases in issue utilizes an unreliable methodology.  According to Kerr-McGee, Maxwell

admitted during his deposition that his damage calculation for forty-eight leases relied upon an

average monthly spot price which Defendants concede is a defensible valuation methodology.  *See*

Defendants' Motion to Strike, at 5.  However, as to the other nine leases at issue, Kerr-McGee

suggests that Maxwell employed a pricing methodology that is not found in the MMS regulations.

*Id.*  To the contrary, Defendants dismiss Maxwell's methodology as reflective of nothing more

than his subjective belief that "it represented a good price."  *Id.*

        Kerr-McGee's Motion to Strike also challenges Maxwell's opinion that, "[i]f MMS had

the underpaid crude oil barrels *today*, the sale value would be approximately $15,036,213 more

than what Kerr-McGee paid MMS."  *Id.* at 6 (emphasis added).  Kerr-McGee claims that

9

Maxwell's expert damages calculations based on "'today's pricing' are unreliable" and "irrelevant" since "the price of oil 'today' has no bearing to the price of oil during the relevant time period of this lawsuit." *Id.* Kerr-McGee contends that Maxwell "cannot invent his own valuation methodology when one is provided for by law in the MMS Regulations" and that basing expert damage "calculations on 'today's' price is speculative, unreliable, and irrelevant." *Id.*

Not surprisingly, Maxwell insists that his damage calculations for all fifty-seven leases comply with MMS regulations and dismisses Kerr-McGee's arguments as a misinterpretation of his deposition testimony. *See* Relator's Response, at 7. According to Maxwell

> [t]he [MMS] regulations set forth criteria and guidelines to be used in calculating royalty due, but do not detail how all the calculations are made. The regulations set forth criteria such as certain publically published prices that can be used, that contracts for similar crude oil types may be used, that net-back pricing may be used, and that other reasonable methods may be used to determine royalty value.

*Id.* at 8. The Relator claims that as to the nine leases in question, there was either no published index price at all for their type of crude oil, or they involved a type and/or quality of crude oil that required index price adjustments to determine a market value. Maxwell states that his damage calculation for the nine leases relied on the same index adjustments used by Kerr-McGee in contracts with Texon and subsequent purchasers. *Id.* Quite simply, Maxwell maintains that his damage calculations for all leases comply with MMS regulations.

Under Rule 702, the goal of an expert's methodology is reliability, not certainty. "The plaintiff need not prove that the expert is indisputably correct or that the expert's theory is 'generally accepted.'" *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). The trial court must assess "the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter*

*Corp.*, 328 F.2d 1212, 1221 (10th Cir. 2003).  *Cf. Khan v. State Oil Co.*, 93 F.3d 1358, 1365 (7th Cir. 1996) (recognizing that Rule 702 requires a testifying expert to employ the same methods he uses in his professional work), *judgment vacated on other grounds*, 522 U.S. 3 (1997).  However, the reliability requirement should not be applied too strictly.  *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 784 (3rd Cir. 1996) (recognizing that "helpfulness to the trier of fact remains the ultimate touchstone of admissibility").  If there are "good grounds" for the proffered opinions, the reliability requirement under Rule 702 is satisfied.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 590.

Kerr-McGee's attack on Maxwell's methodology is more properly directed to the weight of the proffered opinions and not to their admissibility.  *Cf. Cohen v. Lockwood*, 2004 WL 763961, * 2 (D. Kan. 2004) ("questions related to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility").  *See also United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996) (the perceived flaws in the testimony of the experts are "matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process"); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) (any weaknesses in the underpinnings of an expert's opinion, goes to its weight, not its admissibility; opposing counsel will have cross-examination to ferret out the opinion's weaknesses).  As the Supreme Court has acknowledged,

> [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence . . . . These conventional devices, rather than wholesale exclusion under an uncompromising 'general acceptance' test, are the appropriate safeguards where the basis of [expert] testimony meets the standards of Rule 702."

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 596.

Accordingly, Kerr-McGee's request to strike Maxwell's damage calculations for the nine specified leases is denied.

C.      ***Testimony Derived From Confidential MMS Information***

Finally, Kerr-McGee seeks to preclude "any expert or other testimony derived from confidential MMS information learned by Maxwell due to his service as an MMS auditor to which Kerr-McGee has not been provided access." *See* Defendants' Motion to Strike, at 9.  In particular, Kerr-McGee takes exception to Maxwell's expert report which opines that "Kerr-McGee's failure to market its crude oil for the benefit of both the lessee and lessor is the *most egregious* example I have ever seen of a lessee's failure to adequately market crude oil." *See* Exhibit B, at 8, attached to Defendants' Motion to Strike (emphasis added).  When Defendants attempted to explore the factual underpinnings for this opinion during the Relator's deposition, Mr. Maxwell acknowledged that his comparative assessment of Kerr-McGee's conduct was based on his experience in auditing oil companies over several years.  Pressed to identify the location of these audit files, Maxwell said that he had no idea.  Maxwell further conceded that when companies provide information in response to an MMS audit, those documents are provided on a confidential basis.  Maxwell explained "that's why I do not give any pricing data on a specific company, nor do I have it." *See* Deposition Testimony of Bobby Maxwell, Exhibit C, at 251-52, attached to Defendants' Motion to Strike.  Kerr-McGee contends that without access to this confidential auditing information, Defendants cannot effectively challenge the bases for Maxwell's

comparative opinion.[2]

Pursuant to Rule 26(a)(2)(B), Maxwell's report shall contain "a complete statement of all opinions to be expressed and the basis and reasons therefor, [and] the data or other information considered by the witness in forming the opinions." Fed.R.Civ.P. 26(a)(2)(B). *Cf. Kern River Gas Transmission Co. v. 6.17 Acres of Land*, 2005 WL 3257509, 4 (10th Cir. 2005) (allowing a party to present expert evidence that was not disclosed in the expert's report would inhibit the opposing party's ability to prepare for trial). The written report should explain "how" and "why" the expert reached the opinions he intends to offer at trial. *See Reed v. Binder*, 165 F.R.D. 424, 428 n. 6 (D. N.J. 1996) (an expert report should indicate "'what' the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed"). The requirements stated in Rule 26(a)(2) "are mandatory and self-executing." *See Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 59 (1st Cir. 2001).

Moreover, in performing its "gatekeeper" role, the court must be satisfied that the proposed opinions are supported "by appropriate validation – *i.e.* good grounds." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 590. Stated otherwise, expert opinions must have "a traceable, analytical basis in objective fact." *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,157 (1999). Rule 705 of the Federal Rules of Evidence specifically provides that on cross-examination an expert may be required to disclose the

---

[2]Remarkably, neither party has cited the court to any legal authorities that would support its position on this particular issue. The court has been left to conduct its own legal research.

facts and data underlying the proffered opinions and inferences.

Maxwell's desire to express an opinion regarding comparative degrees of "egregious" behavior may reflect nothing more than his fervor as the Relator and, as a practical matter, may be superfluous.  However, if Maxwell intends to testify that the actions of Kerr-McGee are "the most egregious example [he has] ever encountered," he will be required to disclose the "the basis and reasons therefor, [and] the data or other information" he considered in forming that opinion.  *Cf. In re Leap Wireless International, Inc.,* 301 B.R. 80, 84-85 (S.D. Cal. 2003) (granting motion to strike expert opinions that inextricably relied on confidential information that was not disclosed to the opposing party; without access to this confidential information, held that the probative value of the expert's opinion was substantially outweighed by the danger of unfair prejudice).  *Compare TVT Records v. Island Def Jam Music Group*, 250 F. Supp.2d 341, 345 (S.D.N.Y. 2003) (denied motion *in limine* based on the expert's unrefuted representation that he had not relied on confidential information in authoring his damages report).  At present, Kerr-McGee has only Maxwell's *ipse dixit* to link this opinion to unproduced data.

Generally, the court would expect any deficiencies in Maxwell's expert report to be cured through a motion to compel.  *Cf. Intercargo Insurance Co. v. Burlington Northern Santa Fe Railroad*, 185 F. Supp.2d 1103, 1107 (C.D. Cal. 2001).  In this case, it appears that the Relator does not have possession, custody or control over the confidential audit information that forms the basis for his opinion, thereby rendering a motion to compel futile.  There may be little that Maxwell can do to overcome this problem.  However, unless Maxwell elects to withdraw this particular opinion, he must comply with his obligation to seasonably supplement his Rule 26(a)(2)(B) disclosures to the extent they are in some material respect incomplete or incorrect.

14

*See* Fed.R.Civ.P. 26(e)(1).  At this juncture, the court will not strike Maxwell's expert opinion derived from confidential MMS information.  If, however, Maxwell fails to supplement his expert disclosures within thirty (30) days of this Order, Kerr-McGee may renew their motion to strike with regards to this matter.  At this time, Kerr-McGee's Motion to Strike Maxwell's expert opinions or other testimony derived from confidential MMS information is denied without prejudice.

DATED at Denver, Colorado, this 21st day of July, 2006.

BY THE COURT:


*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge