IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-01224-PSF-CBS

UNITED STATES OF AMERICA, *ex rel.*
BOBBY MAXWELL,

    Plaintiffs,

v.

KERR-McGEE CHEMICAL WORLDWIDE, LLC, f/k/a Kerr-McGee Operating Corporation, f/k/a Kerr-McGee Corporation, a Delaware corporation;
KERR-McGEE OIL & GAS CORPORATION, a Delaware corporation;
KERR-McGEE WORLDWIDE CORPORATION, a Delaware corporation; and
KERR-McGEE CORPORATION, f/k/a Kerr-McGee HoldCo, a Delaware corporation,

    Defendants.

## ORDER ON PENDING MOTIONS

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. # 92), filed March 22, 2006. Plaintiff filed his opposition on April 25, 2006 (Dkt. # 103), and defendants replied on May 22, 2006 (Dkt. # 112). Also pending before this Court is Defendants' Motion to Amend and Certify for Interlocutory Appeal (Dkt. # 116), filed June 21, 2006 and fully briefed.

**I. BACKGROUND**

The factual and procedural background of this case is adequately set forth in this Court's Order on Motion for Summary Judgment for Lack of Subject Matter Jurisdiction (Dkt. # 114). Briefly, Mr. Maxwell is a former senior auditor with the Royalty Management Program of the Minerals Management Service ("MMS"), part of the United

States Department of the Interior. He brings this action to recover monies allegedly owed to the United States arising from one or more of Defendant Kerr-McGee's obligations to pay federal oil royalties. Mr. Maxwell avers that for the period of January 1999 through approximately July 2003 Kerr-McGee

> fail[ed] to properly market or otherwise obtain the fair market value for oil produced from federal lands, including offshore Gulf of Mexico, and fail[ed] to increase the royalty value of said oil to reflect either the value of the marketing services provided by others, or to reflect the fair market value which the Defendants should have received if they had properly discharged their duty to market this oil for the benefit of the United States or if they had otherwise not engaged in misconduct or sold this oil pursuant to arms-length contracts.

Am. Compl. at 1-2, ¶ 1.

Specifically, Mr. Maxwell alleges that on July 15, 1997, Kerr-McGee Oil & Gas became subject to a contract with Texon L.P. in which it agreed to exclusively sell all crude oil it produced from federal land to Texon. Kerr-McGee allegedly agreed to the sale of the oil at far below fair market price in exchange for Texon bearing its marketing expenses. Mr. Maxwell contends that Kerr-McGee reported the sales value of the oil for royalty purposes and paid the royalties accordingly, without "grossing up" the actual sales proceeds to reflect the fair market value of the oil and the value of the marketing services provided by Texon. *See e.g.* Amended Complaint at 14, ¶ 48.

The MMS began investigating Kerr-McGee's royalty reporting in 2002. Mr. Maxwell was the senior auditor assigned to the audit. In the course of his investigation, he reached the conclusion that Kerr-McGee "had substantially underpaid its federal oil royalties because Kerr-McGee accepted less than market price in exchange for Texon

incurring the expense of marketing the crude oil." Am. Compl. at 15-16, ¶ 56. He authored a letter and subsequent Orders to Report and Pay Additional Royalties to Kerr-McGee demanding payment of $10 million for the unpaid royalties. Kerr-McGee did not pay as requested.

In his Amended Complaint, Mr. Maxwell asserts that the unpaid federal oil royalties are now worth an estimated $12 million. He seeks all relief entitled to be received by the United States and him from Kerr-McGee under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*

## II. MOTION FOR SUMMARY JUDGMENT

### A. Applicable Legal Standards

Summary judgment is appropriate under F.R.Civ.P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When applying this standard, a court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence on which the jury could reasonably find for the" nonmoving party. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In addition, "'where the non moving party will bear the burden of proof at trial on a dispositive issue'

that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

A reverse false claim action, such as what plaintiff has brought here, is based on an alleged underpayment to the government, as opposed to a more conventional false claim cause of action, generally referring to an inflated or false bill that the government paid. *See United States ex rel. Grynberg v. Praxair, Inc.,* 389 F.3d 1038, 1041 n.2 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2964 (2005); *compare* 31 U.S.C. § 3729(a)(1) *with* § 3729(a)(7). Liability for a reverse false claim arises if a person "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). Although the Act does not define the word "obligation," the Tenth Circuit requires relators to allege "an existing, legal obligation to pay or transmit money or property to the government" that was violated. *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1048 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2957 (2005) (quoting *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236-37 (11th Cir. 1999)); *see also United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997) ("The obligation cannot be merely a potential liability . . . , a defendant must have had a present duty to pay money or property that was created by statute, regulation, contract, judgment, or acknowledgment of indebtedness.").

Falsity, also undefined by the FCA, "means a lie. At a minimum the FCA requires proof of an objective falsehood. Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *United States ex rel. Morton v. A Plus Benefits, Inc.,* 139 Fed. Appx. 980, 982-83 (10th Cir., July 19, 2005) (citing *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477-78 (9th Cir.), *cert. denied*, 519 U.S. 865 (1996)). The statute does define "knowingly." A false statement is made "knowingly" if a person: "1) has actual knowledge of the information; 2) acts in deliberate ignorance of the truth or falsity of the information; or 3) acts in reckless disregard of the truth or falsity of the information, and no specific intent to defraud is required." 31 U.S.C. § 3729(b).

**B. Parties' Positions**

Defendants in their Motion for Summary Judgment contend that they are entitled to judgment as a matter of law because the undisputed material facts preclude Mr. Maxwell from proving the above required elements to sustain his FCA claim. First, they assert that they have no real and legally enforceable duty to pay or transmit money or property to the government. Further, the Kerr-McGee defendants contend that they have not made any statement that is false. Even if they had, they contend that any false statement was not made "knowingly," as required by the statute.

Mr. Maxwell argues that the Kerr-McGee defendants are liable under the FCA because they had an obligation to market prudently the oil and pay royalties on the fair

market value of the oil. He contends that the MMS Form 2014s (the "2014s") provided by Kerr-McGee to the government setting forth its crude oil royalty calculations were knowingly false because the reported royalty value failed to account for the additional consideration Kerr-McGee received from Texon and failed to report the fair market value of the oil.

### C. Does Kerr-McGee Have an Obligation to Pay Money to the Government?

Kerr-McGee argues that it has no obligation to pay money to the government, as it has paid the royalties under its leases and the MMS has not issued an order obligating any additional payment. *See* Dennett Decl. at ¶ 9, attached as Ex. A-4 to Defs.' Br. Supp. S.J. (MMS management official explaining the agency's decision to not issue a payment order to Kerr-McGee). Kerr-McGee cites to Mr. Maxwell's deposition for the proposition that a legal obligation by the royalty payor to pay is not triggered until an order to that effect is issued. *See* Maxwell Dep. at 96:9-97:12, attached as Ex. A-11 to Defs.' Br. Supp. S.J.

However, Mr. Maxwell contends that Kerr-McGee's obligation to report accurately federal royalties stems from each lease, the oil and gas regulations, as well as Kerr-McGee's repeated express certification on each federal royalty report that the report was "accurate and complete." *See* Pl.'s Opp. at 4-6, ¶¶ 2-9. He cites 30 C.F.R. § 206.106 for the principle that Kerr-McGee was obligated to prudently market the oil and pay royalties on the fair market value of the oil.[1]  *Id.* at 5, ¶ 6. Mr. Maxwell also

---

[1]Title 30 C.F.R. § 206.106 provides: "You must place oil in marketable condition and market the oil for the mutual benefit of the lessee and the lessor at no cost to the Federal Government. If you use gross proceeds under an arm's length contract in determining value,

argues that Kerr-McGee's obligation to the government to pay additional royalties stems from the federal lease.[2] *Id.* at 4-5, ¶ 8; *see also* Maxwell Dep. at 97:13-23 ("[T]he royalties were due, and whether [the MMS] put an order out or not, they're obligated to pay it."). Under the very terms of the lease and the applicable federal regulations, there is a genuine issue of material fact as to whether Kerr-McGee has an obligation to pay additional monies to the government. *See also United States ex rel. Bahrani v. Conagra, Inc.*, 338 F. Supp. 2d 1202, 1205 (D. Colo. 2004) ("The 'obligation' to pay or transmit money may arise in contract, or at law in the form of a legal judgment or 'debt.' or may be created by statute or regulation. Whatever its source, however, the 'obligation' refers not only to a real and legally enforceable duty to pay or transmit money or property to the government, but one that pre-exists the acts in which the defendant engages to avoid it.") (internal citations omitted). Kerr-McGee's obligation to pay royalties thus stems from its preexisting duties under its lease and the governing regulations, not the discretion of the MMS in issuing an order to pay.

---

you must increase those gross proceeds to the extent that the purchaser, or any other person, provides services that the seller normally would be responsible to perform to place the oil in marketable condition or to market the oil."

[2]The federal lease, Ex. 2 to Pl.'s Opp. at § 6(b) states that: "The value of production for purposes of computing royalty on production from this lease shall never be less than the fair market value of the production. The value of production shall be the estimated reasonable value of the production as determined by the Lessor, due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field or area, to the price received by the Lessee, to posted prices, to regulated prices, and to other relevant matters. Except when the Lessor, in its discretion determines not to consider special pricing relief from otherwise applicable Federal regulatory requirements, the value of production for the purposes of computing royalty shall not be deemed to be less than the gross proceeds accruing to the Lessee from the sale thereof."

The parties also disagree as to which MMS Audit Report was the agency's final determination. Kerr-McGee contends that the February 2004 Audit Report (Ex. A-15 to Defs.' Br. Supp. S.J.), which concluded that "Kerr-McGee provided MMS with sufficient arguments and evidence to convince MMS Management Kerr-McGee's crude oil and natural gas sales were in substantial compliance," relieves them of the obligation to pay the government. However, Mr. Maxwell argues that the subsequent December 2004 Audit Report (Ex. 1-C to Pl.'s Opp.) constitutes the formal report that was issued by MMS. That December 2004 Audit Report states that the MMS "has completed an audit of Kerr-McGee Oil and Gas Corporation practices and procedures relating to the computation and payment of royalties due on offshore minerals removed from Federal Leases." *Id.* at 2. It concluded that "the seventh (7th) issue; a crude oil issue based on Kerr-McGee's acceptance of less than the market price of its crude oil in exchange for the purchaser assuming part of Kerr-McGee's administrative and marketing responsibilities will remain open." *Id.* at 8. Here, in addition to the obligation analysis above, Mr. Maxwell presents sufficient evidence to show that there is a dispute with respect to which report was the final determination and whether the earlier audit report relieves defendants of an obligation to pay monies.

### D. Did Kerr-McGee Make a False Statement?

Kerr-McGee argues that even if an obligation had arisen, it did not make a false statement. It submits that there is no evidence suggesting that defendants received services from Texon that they were required but failed to report on the 2014 forms. In support of this proposition, Kerr-McGee refers to the deposition of David Darouse. Ex.

8

A-3 to Defs.' Br. Supp. S.J.  Mr. Darouse, a Louisiana state auditor who audited the Texon contract, concluded that he "found no indication that there was any further activity between the two companies other than Kerr-McGee selling and Texon buying crude oil."  Exhibit A-3 at 60:25-61:2.  However, according to Mr. Darouse's deposition, he relied on Kerr-McGee's swearing to him that "they were not getting anything else" as a basis for his decision.  *Id.* at 61:10-12.  Further, Mr. Darouse noted that Louisiana kept "a fraud exclusion that if something comes to light at a future date this issue is opened up again."  *Id.* at 61:14-16.  Mr. Darouse also stated that although Louisiana had not alleged fraud in the situation involving Kerr-McGee and Texon, it had alleged fraud in a situation "almost identical to what Kerr-McGee was doing" and might have done so here had the matter been turned over to outside attorneys.  *Id.* at 64:2-6.  Under such circumstances, Kerr-McGee's reliance on Mr. Darouse's deposition to support its position is not sufficient to compel a reasonable factfinder to find in its favor as a matter of law.

Kerr-McGee also relies on the deposition of Peter Goodwin, who according to Kerr-McGee essentially maintains that the value of the so-called "services" provided by Texon was zero.  Defs.' Br. Supp. S.J. at 11 (citing Goodwin Dep., attached as Ex. A-17 to Defs.' Br. Supp. S.J. at 146:24-147:2).  In response, Mr. Maxwell presents evidence that there were "dollars saved" by defendants pursuant to their contracts with Texon.  He alleges that the 2014s that Kerr-McGee submitted for each lease were false because the reported royalty value failed to account for the additional consideration Kerr-McGee received from Texon and also failed to report the fair market value of this

9

federal oil, as required by the operable lease and federal regulations. Again the Court finds a genuine issue of material fact as to whether defendants received valuable services from Texon, obligating them to report such consideration and pay additional federal royalties and making the submitted 2014's–which omitted this information–false.

This case is materially different from the circumstances before the Tenth Circuit in *Morton*, 139 Fed. Appx. at 983-84, in which the court held that relators failed to allege a false claim because resolution of two sets of inherently ambiguous issues was required to find a false claim. The *Morton* court held that whether the medical care at issue was "custodial or therapeutic" and whether the care at issue fell within the ERISA plan's definition of "custodial" care was "inherently ambiguous." Here, the lease terms and the regulations are not ambiguous, and the factual issue of whether Kerr-McGee received additional value under its Texon contracts is appropriate for a jury to determine.

### E. Was Any Kerr-McGee's False Statement Made Knowingly?

For a false statement to be made "knowingly," a defendant must have "actual knowledge" of the statement's falsity or have acted "in deliberate ignorance" or "in reckless disregard" of its truth or falsity. 31 U.S.C. § 3729(b). Kerr-McGee contends that even if its 2014s contained some false information, there is no evidence that it knowingly made any false representations on its forms. Kerr-McGee emphasizes its "meticulous and careful" preparation and submission of its 2014s as evidence that it did not knowingly make a false statement. Defs.' Br. Supp. S.J. at 14. It also relies on the February 2004 Audit Report which "found no instances of fraud, illegal acts, violation of

provisions of contracts, and abuse." *Id.*; *see also* Ex. A-15 to Defs.' Br. Supp. S.J. However, the subsequent December 2004 Audit Report does not make such a finding with respect to the leases and royalty payments at issue.

Mr. Maxwell claims that Kerr-McGee acted in "reckless disregard" in filing its 2014s. He claims that Kerr-McGee was fully aware that it was not prudently marketing the oil as required, that it was selling the oil at below-market prices, and that it was receiving other significant consideration from Texon. Such alleged knowledge if proven arguably amounts to a reckless disregard for the truth of its 2014s, which did not reflect the additional consideration and which reported royalties on oil sold below market value. This final issue, which depends to some degree upon a finding on the first two issues, also is inappropriate for summary judgment. *See Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 531 (10th Cir. 2000) (vendor that submitted bills for work performed but failed to comply with governing environmental regulations could be liable for false claim where invoices implied such compliance); *United States ex rel. Wright v. Cleo Wallace Centers*, 132 F. Supp. 2d 913, 926 (D. Colo. 2000) ("[A] person who knowingly submits claims to the government for the purpose of acquiring federal Medicaid funds while not in compliance with all relevant laws, rules and regulations may constitute a false claim under the FCA, even without an affirmative or express false statement of such compliance.").

Kerr-McGee relies on a Fourth Circuit case for the proposition that the government's prior knowledge of the allegedly false claim at issue negates the required scienter for an FCA violation. *See* Defs.' Br. Supp. S.J. at 16 (citing *United States ex*

*rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002), *cert. denied*, 538 U.S. 1012 (2003)); *see also Shaw*, 213 F.3d at 534 ("[T]here may still be occasions when the government's knowledge of or cooperation with a contractor's actions is so extensive that the contractor could not as a matter of law possess the requisite state of mind to be liable under the FCA."). However, *Becker* involved a situation in which the government knew the facts as known by the defendant prior to the allegedly false claim being made. 305 F.3d at 287-88. Here, in contrast, the government's knowledge only came after the allegedly false claims (the 2014s) were presented to the government. Kerr-McGee's alleged scienter in filing the 2014s is thus not necessarily negated as a matter of law by later government knowledge. In fact, the need for the government audit in the first place arguably supports (or at least does not contradict) a potential finding of scienter on the part of Kerr-McGee. *Cf. United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 686 (5th Cir. 2002) (government knowledge can be a defense where "the government approved and paid the claim with full knowledge of the relevant facts"). Here, the government did not know of or cooperate with Kerr-McGee's dealings with Texon or assist in the formulation of its Form 2014 representations. Further, Mr. Maxwell contends that the government never had full knowledge of all of the relevant facts. *See* Maxwell Aff. at 4-7, ¶¶ 7-9, attached as Ex. 1 to Pl.'s Opp. Given that Mr. Maxwell appears to have been in a position to know and for the other reasons set forth above, the Court cannot grant Kerr-McGee summary judgment.

## III. MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

Kerr-McGee requests this Court to amend its Order dated June 9, 2006 (Dkt. # 114), denying Kerr-McGee's motion for summary judgment for lack of subject matter jurisdiction, to include a 28 U.S.C. § 1292(b) certification, allowing defendants to seek an interlocutory appeal as to Mr. Maxwell's qualification as an original source and as a relator under the FCA. Under § 1292(b),

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

The four requirements distilled from this statute for such a certification are thus 1) the case is a civil action; 2) the issue requested for certification involves a controlling question of law; 3) there exists substantial ground for difference of opinion as to that question; and 4) the district court believes that an immediate appeal may materially advance the ultimate termination of the litigation. *See In re Grand Jury Proceedings*, 767 F. Supp. 222, 223 (D. Colo. 1991).

This case is undisputedly a civil action, meeting the first requirement. As for the second, a "controlling" question of law is one that has "the potential for substantially accelerating disposition of the litigation." *Id.* at 225. In other words, "[i]f the correct answer to the question will end the matter pending, the question is controlling." *Id.* The two issues Kerr-McGee seeks to certify–whether a government auditor can

"voluntarily" provide information to the government as contemplated by the FCA in order to qualify as an original source and whether applicable conflict of interest regulations preclude a government auditor from serving as a relator in an FCA action stemming from an audit he or she participated in–are controlling to the extent that a determination in Kerr-McGee's favor would result in dismissal of this lawsuit for lack of jurisdiction.

The third requirement, a substantial ground for difference of opinion, exists here where the Tenth Circuit has not squarely addressed the eligibility of a government auditor to be an original source or a proper relator in an FCA suit.  The Ninth Circuit has in fact held that a government auditor could not voluntarily disclose information as required by the FCA because as "a salaried government employee, [he was] compelled to disclose fraud by the very terms of his employment."  *United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 743 (9th Cir. 1995), *cert. denied*, 517 U.S. 1233 (1996); *see also United States ex rel. Foust v. Group Hospitalization & Med. Servs., Inc.*, 26 F. Supp. 2d 60, 73 (D.D.C. 1998) ("Because relators were salaried government employees compelled to uncover and disclose fraud under the terms of their employment they did not *voluntarily* provide the information at issue to the government.") (emphasis in original).

As for conflict of interest regulations potentially precluding a *qui tam* suit by a government auditor, the Tenth Circuit *en banc* expressly declined to rule on such an issue in *United States ex rel. Holmes v. Consumer Ins. Group*, 318 F.3d 1199, 1214 n.11 (10th Cir. 2003).  Admittedly, the court in *dicta* did not indicate likely preclusion of

such a suit due to conflict of interest regulations, but only that a government employee "might have to forfeit all or part of the recovery obtained in a *qui tam* action." *Id*. In dissent, three judges took the position that the FCA should be read more narrowly in conjunction with applicable conflict of interest regulations. *Id.* at 1216. In any event, the direct auditing role played by Mr. Maxwell for the MMS over Kerr-McGee may well be found to be materially different for FCA purposes than that played by Ms. Holmes as a postmaster who acquired knowledge about alleged wrongdoing at another post office over which she had no supervisory responsibilities. Yet, as this Court has previously indicated, the possible policy imperfections of allowing a government auditor to pursue a *qui tam* action after his enforcement position has been rejected by his superiors does not appear to foreclose his standing under the statutory scheme. *See* Order on Motion for Summary Judgment for Lack of Subject Matter Jurisdiction at 14 (Dkt. # 114). The Court thus finds that the third requirement for certification has been met.

As for the final requirement, the Court finds that an immediate appeal may materially advance the ultimate termination of the litigation here, where a ten-day jury trial currently scheduled for November 27, 2006 may be avoided. If the Tenth Circuit determines that Mr. Maxwell cannot qualify as an original source or a relator in this action, the case must be dismissed for lack of subject matter jurisdiction. Therefore, the Court supplements its Order of June 9, 2006 to certify pursuant to 28 U.S.C. § 1292(b) the two issues raised by Kerr-McGee in its Motion to Amend.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. # 92) is DENIED. Defendants' Motion to Amend and Certify for Interlocutory Appeal (Dkt. # 116) is GRANTED. The Court's Order of June 9, 2006 (Dkt. # 114) is hereby SUPPLEMENTED to include a 28 U.S.C. § 1292(b) certification permitting Kerr-McGee to seek an interlocutory appeal as to the two legal issues as set forth in its Motion to Amend. Counsel for defendants are directed to proceed expeditiously in filing their intended interlocutory appeal with the Tenth Circuit, in any event no later than by **October 19, 2006**. This case is STAYED pending the outcome of any appeal.

DATED: October 6, 2006.

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge