IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01224-MSK-CBS

UNITED STATES OF AMERICA,
*ex rel.* BOBBY L. MAXWELL,
      Plaintiff,
v.

KERR Mc-GEE OIL & GAS CORPORATION,
a Delaware corporation;
      Defendant.

---

**ORDER ON MOTION TO STRIKE NOTICE OF ATTORNEYS'
LIEN AND FOR SANCTIONS**

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Richard C. LaFond Esq.'s Motion to Strike
Notice of Attorneys' Lien and For Sanctions (doc. # 298), filed on August 3, 2009.  Mr. LaFond,
who is co-counsel of record for Relator Bobby L. Maxwell, requests an order striking a Notice of
Attorneys' Lien filed by Charlotte N. Sweeney, Esq. on behalf of the law firm of LaFond &
Sweeney, LLC.  Pursuant to an Memorandum (doc. # 299) dated August 6, 2009, the instant
motion was referred to the Magistrate Judge.  I heard oral argument on the pending motion on
October 19, 2009.  The court has carefully considered the parties' briefs and attached exhibits,
the oral presentations of counsel, the entire case file, and the applicable law, and is sufficiently
advised in the premises.  For the reasons set forth below, Mr. LaFond's Motion to Strike Notice
of Attorneys' Lien and For Sanctions is denied.

1

## FACTUAL BACKGROUND

Bobby Maxwell, a senior auditor with the Royalty Management Program of the Minerals Management Service ("MMS"), a branch of the United States Department of the Interior, initiated this action on June 14, 2004 through his counsel, Michael Porter - a sole practitioner - and Richard LaFond of LaFond & Sweeney, LLC.  Maxwell brought suit under the False Claims Act, 31 U.S.C. § 3729, *et seq,* alleging that Kerr-McGee underpaid royalties owed to the United States by failing to properly market oil produced from government property.  Maxwell claimed that Defendants failed to discharge their duty to market the oil, failed to gross up the sale proceeds or otherwise failed to ensure that federal royalties were based on at least the fair market value of the oil.  Although Defendant Kerr-McGee moved for summary judgment based on lack of subject matter jurisdiction, the trial court concluded it had insufficient facts to foreclose the Relator's pursuit of this action.

On January 23, 2007, after a five day trial, the jury returned a $7,555,886.28 verdict (doc. # 198) in favor of Mr. Maxwell.[1]  Defendant Kerr-McGee subsequently filed a Motion for Findings and Conclusions Regarding the Court's Subject Matter Jurisdiction (doc. # 214).  On March 30, 2007, Judge Figa granted Defendant's motion and entered an Order of Dismissal for Lack of Subject Matter Jurisdiction (doc. # 231), after concluding that Mr. Maxwell did not qualify as an original source for purposes of the False Claims Act.  Mr. Maxwell appealed this decision.

On September 10, 2008, the Tenth Circuit held that "the transfer of information between

---

[1]Pursuant to the terms of the False Claims Act, Mr. Maxwell is entitled to recover between 25% and 30% of this award.  *See* Order Denying Defendant's Renewed Motion for Judgment as a Matter of Law (doc. # 304), at n.6.

a federal employee and a state government auditor who is under a duty of confidentiality is not a public disclosure and therefore does not deprive the courts of jurisdiction." *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1182 (10th Cir. 2008). Having concluded that Mr. Maxwell may properly act as a relator, the Tenth Circuit reversed the district court's dismissal of the case for lack of subject matter jurisdiction and remanded the case for further proceedings. On September 30, 2009, Judge Robert E. Blackburn[2] entered an Order Denying Defendant Kerr-McGee's Renewed Motion for Judgment as a Matter of Law, Alternative Motion for New Trial and Motion for Remittitur (doc. # 304). In particular, Judge Blackburn declined to grant Defendant's request for remittitur of the jury's damage award and a new trial in the event that Mr. Maxwell did not accept the remittitur. On November 4, 2009, Relator Maxwell filed a Renewed Motion for Entry of Judgment (doc. # 313), which seeks the following judgment in favor of the United States and Mr. Maxwell:

1. The Jury's award of $7,555,886.28'

2. The addition to the jury's award of Kerr McGee's contractual and regulatory late payment charges . . . ;

3. The trebling of the combination of the jury's award of $7,555,886.28 and the late payment charges, pursuant to 31 U.S.C. § 3729(a)'

\* \* \*

5. The imposition of mandatory penalties, pursuant to 31 U.S.C. § 3729(a) in the range of $7,598,500.00 to $15,197,000.00;

6. The award of post-judgment interest on the full amount of judgment, pursuant to 28 U.S.C. § 1961;

---

[2]On March 24, 2009, this case was reassigned to Judge Blackburn after the passing of Judge Figa. This case has recently been reassigned to Judge Marcia S. Krieger following Judge Blackburn's Order of Recusal (doc. # 320)

3

\* \* \*

8.      The Relator's entitlement, pursuant to 31 U.S.C. § 3730(d)(2), to his reasonable expenses, attorneys' fees and costs, and that the amount of such expenses, fees and costs will be determined in collateral, post-judgment proceedings; [and]

9.      The Relator's entitlement, pursuant to 31 U.S.C. § 3730(d)(2), to a percentage of the proceeds, in the range of 25 percent to 30 percent; and that the determination of this reasonable share will be made in collateral, post-judgment proceedings;

*See* Relator's Renewed Motion for Entry of Judgment, at 6-7.

Even as Mr. Maxwell's case was wending its way through the courts, LaFond & Sweeney, LLC was coming to a close. For purposes of this Order, the court is not required to make any findings as to the circumstances that precipitated Mr. LaFond's and Ms. Sweeney's decision to dissolve the firm. Suffice to say, Mr. Maxwell received a letter sent on May 28, 2008 from Mr. LaFond and Ms. Sweeney indicating that, effective June 1, 2008, LaFond & Sweeney LLC was dissolving. Mr. Maxwell was told that, absent instructions to the contrary, his case would be handled in the future by Mr. LaFond practicing as Richard C. LaFond, PC. *Id.* The letter was signed by both Mr. LaFond and Ms. Sweeney. *Id.* After June 1, 2008, Ms. Sweeney established her law practice under the name Sweeney & Bechtold, LLC. With the dissolution of their law firm, Mr. LaFond and Ms. Sweeney agreed to allocate accounts receivable for several clients, but were unable to reach agreement on some matters, including Mr. Maxwell's *qui tam* case. *See* Exhibit B to the Affidavit of Richard C. LaFond (doc. # 298-6), attached to the Motion to Strike.

Those disagreements ultimately culminated in Mr. Lafond initiating a lawsuit, *LaFond v. Sweeney*, 09CV1959, in the District Court, City and County of Denver, (hereinafter "the state

litigation') on February 20, 2009.  *See* Exhibit C (doc. # 300-4) attached to Response in

Opposition.  In his Complaint, Mr. LaFond alleges generally that Ms. Sweeney is now contesting

the validity of their Case Distribution Agreement, and he asserts claims for declaratory relief,

breach of contract, promissory estoppel, intentional interference with contract, and abuse of

process.  *Id.*

    Ms. Sweeney filed the instant Notice of Attorneys' Lien on behalf of LaFond &

Sweeney, LLC on March 9, 2009, and filed her Answer and Counterclaims in the state litigation

on March 19, 2009.  *See* Exhibit D (doc. # 300-5) attached to Response in Opposition.  Ms.

Sweeney's Answer avers that after June 25, 2008

> the parties continued to negotiate but that, due to Mr. LaFond's insistence that
> any agreement was dependent upon Ms. Sweeney agreeing to forego her
> entitlement to 50 percent of the Firm Profits from the Maxwell case, which profits
> are estimated to be in excess of $2 million, no definitive or final agreement was
> ever reached by and between Ms. Sweeney and Mr. LaFond as to the dissolution
> of the Firm and the division of Firm Profits.[3]

*Id.* at ¶ 25.  In particular, Ms. Sweeney contends that she is "entitled . . . to a declaration of her

rights in and to an equal share of not less than 50 percent of all Firm Profits in all Firm cases,

including profits resulting from the award of attorneys' fees, costs, and the recovery of accounts

receivable, whether earned or to be earned from Firm clients."  *Id.* at ¶94.  Ms. Sweeney has

brought counterclaims for breach of contract, promissory estoppel, breach of duty of good faith

and fair dealing, constructive trust and unjust enrichment.

    On September 23, 2009, the court in the state litigation granted Defendant Sweeney's

Motion to Amend Counterclaims and Join Necessary Party.  The state court concluded that the

---

[3]In quoting or paraphrasing pleadings filed by the parties in the state litigation, the court
draws no conclusions as to the merits these allegations.

law firm of Lafond & Sweeney, LLC should be joined as a necessary party.[4]   *See* Exhibit D (doc. #306-5) attached to Supplemental Response in Opposition to Motion to Strike.   Defendant-Counterclaimant LaFond & Sweeney, LLC has asserted claims against Mr. LaFond for declaratory judgment, breach of contract, promissory estoppel, breach of fiduciary duty, breach of the duty of good faith and fair dealing, constructive trust, and unjust enrichment/quantum meruit.   Trial in the state litigation apparently is set to commence on April 5, 2010.

In moving for sanctions under Fed. R. Civ. P. 11, Mr. Lafond argues that Ms. Sweeney and her counsel filed a Notice of Attorney's Lien that contains factual statements that they knew or reasonably should have known were false.   Specifically, Mr. LaFond challenges the assertion in the March 9, 2009 Notice that Maxwell terminated his relationship with LaFond & Sweeney LLC without cause on June 6, 2009.   In addition to violating Rule 11, Mr. LaFond asserts that this misstatement constitutes a violation of Rule 3.3 of the Colorado Rules of Professional Conduct, which prohibits an attorney from making false statements of material fact or law to a tribunal, or failing to correct a false statement previously made to a court.   The Motion to Strike further argues that Ms. Sweeney's counsel, Burns, Figa & Will, P.C., falsely claims to represent LaFond & Sweeney, LLC, when in fact they actually represent Sweeney in her individual capacity in the pending state litigation.   Finally, Mr. LaFond insists that the Notice of Attorneys' Lien was filed for an improper purpose, *i.e.,* unnecessarily increasing the costs of litigation and encumbering fees that properly belong to Mr. LaFond.   As sanctions for these alleged Rule 11 violations, Mr. LaFond seeks an order striking the Notice of Attorneys' Lien, as well as an award

---

[4]The docket sheet in the state litigation reflects that Defendant-Counterclaimant LaFond & Sweeney, LLC is represented by attorneys with Burns, Figa & Will, P.C.

of attorneys fees and costs.

Not surprisingly, Ms. Sweeney and her counsel take a decidedly different view.  Ms. Sweeney insists that any factual misrepresentations have been made by Mr. LaFond since his Motion to Strike studiously ignores the July 27, 2009 Amendment to the Notice of Attorneys' Lien.  Ms. Sweeney further contends that Mr. LaFond failed to disclose to this court her proposal that the former colleagues simply agree to place all funds recovered in the Maxwell case in an interest-bearing trust account pending resolution of the state litigation.[5]  As a co-member of LaFond & Sweeney, LLC, Ms. Sweeney maintains that she is discharging her authority and fiduciary obligation to recover amounts she believes are owed the law firm for services rendered in connection with Mr. Maxwell's litigation prior to June 1, 2008.   Ms. Sweeney also believes that she was acting within her rights as a member of the limited liability company to retain counsel to act on behalf of the law firm.  Ms. Sweeney insists that she was not motivated by an improper purpose, but rather only filed the Notice of Attorneys' Lien after Mr. LaFond refused to reasonably accommodate their competing interests in the context of the state litigation.

In short, each side wishes to claim the mantle of victim while portraying their former colleague as an avaricious violator of Rule 11.  Although the court reluctantly finds itself in the middle of this dispute, I have the advantage of weighing the competing arguments without the emotional baggage that may color the parties' assessments.

---

[5]As might be expected, Mr. LaFond disputes each of these contentions and offers additional examples of what he characterizes as Ms. Sweeney's "inaccuracies" in his Reply to Response in Opposition to Motion to Strike Notice of Attorneys Lien and For Sanctions.

## ANALYSIS

By statute, Colorado gives an attorney a lien on "on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client." *See* C.R.S. § 12-5-119. *Cf. Donaldson Hoffman & Goldstein v. Gaudio*, 260 F.2d 333, 335 (10th Cir. 1958). A "charging lien" seeks to satisfy the attorney's equitable claim for the reasonable value of services rendered to the client, *see In re Estate of Benney*, 790 P.2d 319, 322 (Colo. 1990), as well as unreimbursed litigation costs advanced by the attorney on behalf of the client. *Kallsen v. Big Horn Harvestore Systems, Inc.*, 761 P.2d 291, 292 (Colo. App. 1988). This lien accrues from the moment an attorney commences services, *see In re Marriage of Berkland*, 762 P.2d 779, 782 (Colo. App. 1988), and remains enforceable even if the lawyer subsequently withdraws from the engagement. *Cope v. Woznicki*, 140 P.3d 239, 241 (Colo. App. 2006).

An attorney asserting a "charging lien" "may file, with the clerk of the court wherein such cause is pending, notice" of his or her claim as a lienor. *See* C.R.S. § 12-5-119. However, filing notice of a lien does nothing more that place third-parties on notice of the attorney's putative interest in the funds subject to the lien. *In re Mitchell*, 55 P.3d 183, 186 (Colo. App. 2002) (holding that the mere filing of a lien notice does not serve to commence a civil action to enforce the asserted lien). A "charging lien" ultimately must be enforced in the civil action which gave rise to the lien claim or through an independent lawsuit. *See, e.g., Foothills Meadow v. Myers*, 832 P.2d 1097, 1098 (Colo. App. 1992); *In re Mann*, 697 P.2d 778, 780 (Colo. App. 1984).

In this case, Mr. LaFond contends that the Notice of Attorneys' Lien filed on behalf of

LaFond & Sweeney, LLC, violates Rule 11.  "A court considering a motion pursuant to Rule 11 must do two things: (1) decide whether a Rule 11 violation has occurred, and (2) decide whether to impose sanctions." *Smith & Green Corp. v. Trustees of the Construction Industry & Laborers Health & Welfare Trust*, 244 F. Supp. 2d 1098, 1103 (D. Nev. 2003).  Rule 11, in pertinent part, permits the court to impose sanctions where it determines that a pleading, motion or other paper has been filed

> (1)  for an improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;
>
> (2)  the claims, defenses or other legal contentions are not warranted by existing law or by a non-frivolous argument for extending, modifying or reversing existing law or for establishing new law; or,
>
> (3) the factual contentions do not have evidentiary support, or the denials of factual contentions are not warranted on the evidence.

*See* Fed. R. Civ. P. 11(b).  *Cf. Footman v. Cheung*, 341 F. Supp. 2d 1218, 1224 (M.D. Fla. 2004).  Sanctions under Rule 11 seek to "reduce frivolous claims, defenses, or motions and to deter costly meritless maneuvers, . .. [thereby] avoid[ing] delay and unnecessary expense and litigation." *Smith & Green Corp. v. Trustees of the Construction Industry & Laborers Health & Welfare Trust*, 244 F. Supp. 2d at 1102.  *Cf. Merrigan v. Affiliated Bankshares of Colorado, Inc.*, 775 F. Supp. 1408, 1412-13 (D. Colo. 1991) (sanctions should punish present litigation abuse, deter future litigation abuse, streamline court dockets, and facilitate case management).  I conclude that the attendant circumstances in this case do not warrant the relief sought in Mr. LaFond's motion.

It cannot be disputed that the original Notice of Attorneys' Lien incorrectly stated that Mr. Maxwell "terminated the services of LaFond & Sweeney without cause" on June 6, 2008.  In

truth, Mr. La Fond and Ms. Sweeney advised Mr. Maxwell on May 28, 2008 that their firm was

dissolving effective June 1, 2008. *See* Exhibit A to the Affidavit of Richard C. LaFond (doc. #

298-5), attached to Motion to Strike. *See* Colorado Rule of Professional Conduct 1.16(b)(1) ("a

lawyer may withdraw from representing a client if . . . withdrawal can be accomplished without

material adverse effect on the interests of the client"). The Amendment to Notice of Attorneys'

Lien apparently attempted to address the earlier misstatement by claiming that

> On or about June 6, 2008, the Plaintiff either terminated the Contingent Fee
> without wrongful conduct on the part of LaFond & Sweeney, and/or LaFond and
> Sweeney justifiably withdrew from the representation of the Plaintiff.

*See* Amendment to Notice of Attorneys' Lien, at ¶ 3. It is not at all clear to this court why

counsel for La Fond & Sweeney LLC could not describe in a simple declarative statement the

actual circumstances set forth in the May 28, 2008 letter to Mr. Maxwell. I do not find,

however, that this lack of candor warrants sanctions under Rule 11.

The issue is whether there is a factual and legal basis for LaFond & Sweeney LLC's

"charging lien." The Contingent Fee Agreement signed by Mr. Maxwell and Mr. LaFond as a

representative of LaFond & Sweeney LLC in May of 2004 acknowledged that Mr. Maxwell

would be responsible for any litigation costs advanced by the law firm. The Contingent Fee

Agreement also provided that if the law firm withdrew from the engagement for any reason

permitted by the Colorado Rules of Professional Conduct, it would be entitled to seek "a fee

based upon the reasonable value of the services" provided prior to withdrawal. *See* Exhibit A

(doc. # 300-2) attached to the Response in Opposition to Motion to Strike. Mr. LaFond cannot

reasonably suggest that LaFond & Sweeney LLC terminated its representation of Mr. Maxwell

for an improper reason. There is also some evidence to suggest that LaFond & Sweeney LLC

has not been paid for litigation costs and hours expended in representing Mr. Maxwell prior to

June 1, 2008.[6]  "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading

of every factual statement."  *Federal Deposit Insurance Corp. v. Refco Group, Ltd.*, 989 F. Supp.

1052, 1090 (D. Colo. 1997), quoting *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st

Cir. 1993).  The Rule is satisfied if the substance of the court filing is well-grounded in fact and

law.  *Zhou v. Pittsburg State University*, 252 F. Supp. 2d 1194, 1206 (D. Kan. 2003) (declining

to impose Rule 11 sanctions after finding that counsel's misstatements to the court were not

material)**.**  While the court is not oblivious to counsel's misstatement, I find that the error is not

material in the context of the filing at hand.  *Cf. Rennols v. City of New York*, 2003 WL

22427752, *6 (E.D.N.Y. 2003) (denying plaintiff's motion for Rule 11 sanctions after

concluding that "the misrepresentations allegedly contained in the Defendants' brief represent, at

worst, a 'minor, inconsequential violation' of the Rule"); *LaBarge v. Chase Manhattan Bank,*

*N.A.*, 1998 WL 157338, *1 (N.D.N.Y. 1998) (in declining plaintiffs' requests for Rule 11

sanctions, held that defense counsel's alleged misconduct had not resulted in any harm to

plaintiffs and had not misled the court).  There appears to be factual and legal support for the

Notice of Attorneys' Lien filed by LaFond & Sweeney, LLC.

   Mr. LaFond's other alleged "misrepresentation" is equally unpersuasive from the

standpoint of Rule 11.  In his original Motion to Strike, Mr. LaFond takes exception to the claim

that Burns, Figa & Will, P.C. represents LaFond & Sweeney, LLC, suggesting to the contrary

---

[6]In his Motion to Strike, Mr. LaFond concedes that Ms. Sweeney billed 50.0 hours of
work on behalf of Mr. Maxwell.  It also appears that LaFond & Sweeney, LLC may have
advanced over $60,000 in litigation costs in connection with Mr. Maxwell's litigation.  *See*
Exhibit B to the Affidavit of Richard C. Lafond (doc. 298-6), attached to the Motion to Strike.

that the law firm actually represents Ms. Sweeney in her individual capacity.  Mr. LaFond

expanded upon this argument in his Reply brief and in a more recent filing in the state litigation.

In both forums, Mr. LaFond has argued that Ms. Sweeney and her counsel are not authorized by

law to act as LaFond & Sweeney LLC's agents for purposes of causing the dissolved law firm to

assert claims adverse to one of its members.  In short, Mr. LaFond argues that the Notice of

Attorneys' Lien has been filed in violation of state law.

　　　　Mr. LaFond's complaint in the state court action acknowledges that at "all relevant times,

[Ms. Sweeney] was responsible for . . . . management of the business, including, but not limited

to distributing the Firm's profits to Mr. LaFond and herself."  *See* Exhibit C (doc. #300-4)

attached to LaFond & Sweeney LLC's Response in Opposition.  Mr. LaFond also concedes that

his interpretation of the Colorado Limited Liability Company Act (CLLCA), C.R.S. § 7-80-101,

*et seq.,* is not supported by any Colorado judicial precedents.[7]  *See* Reply to Response in

Opposition*,* at 5.  Although Mr. LaFond's Reply relies upon two appellate decisions from other

jurisdictions, I cannot conclude, in the absence of dispositive authority construing the relevant

---

　　　　[7] I note that the Denver District Court was equally unconvinced by the same arguments
and case law presented in Mr. LaFond's Reply in Response to Opposition.  In granting Ms.
Sweeney's Motion to Amend Counterclaims and Joint Necessary Party, Judge Egelhoff wrote:

> The Court is not persuaded that Defendant [Sweeney] lacks the authority to cause
> LaFond and Sweeney to assert claims in this action.  Plaintiff asserts no Colorado
> authority in support of his position, and application of that position would lead to
> the absurd result that the firm could never assert claims against it members
> because all of the membership would have to agree.

*See* Exhibit D (doc. # 306-5) attached to LaFond & Sweeney LLC's Supplemental Response in
Opposition to Motion to Strike.  *Cf. Dura Systems, Inc. v. Rothbury Investments, Ltd,* 886 F.2d
551, 557 (3rd Cir. 1989) (a filing based on a plausible view of the law, even if arguably self-
serving, does not warrant Rule 11 sanctions).

provisions of the CLLCA, that LaFond & Sweeney LLC's Notice of Attorneys' Lien is so legally deficient as to warrant sanctions.  *Cf. Todd v. City of Natchitoches, Lousiana*, 238 F. Supp. 2d 793, 801 (W.D. La. 2002) (in denying defendants' motion under Rule 11, held that plaintiff's state law argument was not so meritless as to be sanctionable; concluded that a sanctions award would constitute an unwarranted intrusion by the federal court upon state law). "Where the law is arguably unclear, Rule 11 sanctions should not be imposed." *Vanover v. Cook*, 77 F. Supp. 2d 1176, 1177 (D. Kan. 1999), citing *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993).  *See also Clancey v. Mobil Oil Corp.*, 906 F. Supp. 42, 50 (D. Mass. 1995) (holding that Rule 11 sanctions were not warranted where legal precedents were not clearly defined).  Mr. LaFond's arguments relative to the interpretation of the CLLCA are best decided through dispositive motions filed in the state litigation, rather than under the guise of Rule 11.  *Cf. Smith & Green Corp. v. Trustees of the Construction Industry & Laborers Health & Welfare Trust*, 244 F. Supp. 2d at 1104 (holding that Rule 11 should not be used to raise issues of legal sufficiency that are more properly decided in a motion to dismiss or motion for summary judgment).

Finally, Mr. LaFond argues that Rule 11 sanctions should be imposed because the Notice of Attorneys' Lien was filed for an "improper purpose."  *See* Fed. R. Civ. P. 11(b)(1).  Mr. LaFond contends that the alleged misrepresentations in the Notice "have had the effect of needlessly increasing the cost of litigation." *See* Motion to Strike, at 9.  More to the point, Mr. LaFond insists that Ms. Sweeney only filed the Notice to "unlawfully encumber Mr. LaFond's attorneys' fees and costs to coerce Mr. LaFond to settle his Denver District Court action against her." *Id.*  In response, Ms. Sweeney insists that she filed the "charging lien" simply to preserve

13

the firm's lawful rights under C.R.S. § 12-5-119.  *See Rosenheck v. Rieber*, 932 F. Supp. 626 ,

628 (S.D.N.Y. 1996) (the court declined to impose Rule 11 sanctions where it was not

unequivocally clear that the complaint was filed for improper purposes or patently clear that

plaintiff's claim had absolutely no chance of success).

I am not persuaded by Mr. LaFond's arguments.  This court is at a loss to see how the

Notice of Attorneys' Lien will significantly add to the burdens or expense of the state court

action that Mr. LaFond initiated.  *Cf. Carter v. United States*, 973 F.2d 1479, 1489 (9th Cir. 1992)

(held that the papers filed by the government in defense of a lawsuit initiated by the plaintiff

taxpayer did not constitute harassment or cause unnecessary delay sufficient to warrant sanctions

under Rule 11).  It also appears that since the state court action was filed on February 20, 2009,

Mr. LaFond and Ms. Sweeney have been unsuccessful in resolving their disputes.  Even if the

court were to assume that Ms. Sweeney filed the "charging lien" in an effort to enhance her

negotiating position, I suspect the strategy has backfired as nothing in the Motion to Strike

suggests that Mr. LaFond has become more inclined toward compromise.  Indeed, Mr. LaFond's

Motion to Strike may be motivated by the same self-interest that he attributes to Ms. Sweeney.

*Cf. Murphy v. Board of Education of Rochester City School District*, 420 F. Supp. 2d 131, 141

(W.D.N.Y. 2006) (denying plaintiff's motion for Rule 11 sanctions which was little more than a

counterattack prompted by tactical considerations).

A motion for Rule 11 sanctions premised on an alleged "improper purpose" requires

more than simply an adversarial relationship or hotly contested litigation.

> [T]he conduct forming the basis of the charge of harassment must do more than in
> fact bother, annoy or vex the complaining party.  Harassment under Rule 11
> focuses on the improper purpose of the signer, objectively tested, rather than the
> consequences of the signer's act, subjectively viewed by the signer's opponent.

14

*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831-32 (9th Cir. 1986), *abrogated on other grounds by* 496 U.S. 384 (1990). *See also Guidry v. Clare*, 442 F. Supp. 2d 282, 289 (E.D. Va. 2006) (the court should not impose Rule 11 sanctions simply because the moving party subjectively believes that a filing was brought to harass; rather, a party's improper purpose must be ascertained from the lack of a legal or factual basis for the filing).

> The imposition of Rule 11 sanctions is properly reserved for exceptional circumstances, and motions "should not be made or threatened for minor, inconsequential violations" of the standards. Perhaps even more important than when a party decides to deploy a Rule 11 motions is the way in which it is used.

*Wartsila NSD North America, Inc. v. Hill International, Inc.*, 315 F. Supp. 2d 623, 627-28 (D.N.J. 2004) (internal citations omitted). I do not find in this case that the Notice of Attorneys' Lien was filed for an improper purpose as that standard is applied for purposes of Rule 11(c)(1).

Having decided to deny Mr. LaFond's motion for sanctions, I must still address the applicability of Rule 11(c)(2), which provides that the court may, if warranted, "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." The accompanying Advisory Committee Notes make clear this provision may be invoked in favor of a target who defeats a sanctions motion. *See* Advisory Committee Notes for the 1993 Amendments to Fed. R. Civ. P. 11. However, in deciding whether to impose sanctions under Rule 11, the court is entitled to consider the conduct of both sides. *Cf. Lightning Lube, Inc. v. Witco Corp.*, 144 F.R.D. 662, 668 (D.N.J. 1992). *See also Kassner v. Ashley Plaza Mall Associates*, 758 F. Supp. 939, 941 (S.D.N.Y. 1991) (declining to impose sanctions where counsel for both parties engaged in frivolous motion practice in utter disregard of the time constraints every court faces). In this case, I will not award fees and costs to Ms. Sweeney. The original Notice of Attorneys' Lien was factually incorrect in describing the circumstances under which

15

Mr. Maxwell severed his ties with LaFond & Sweeney.  In deciding the pending Motion to

Strike, the court has been forced to expend time finding the pertinent case law that was not cited

by either side.  Finally, I cannot ignore the hotly contested litigation in state court.  I fear that an

award of fees and costs would only add fuel to an already burning fire, and further embroil the

federal court in a dispute that is properly resolved in a different forum.  I will leave the parties

where I find them.

Accordingly, for the foregoing reasons, Mr. LaFond's Motion to Strike Notice of

Attorneys' Lien and For Sanctions (doc. # 298) is DENIED.

DATED this 17th day of February, 2010.

BY THE COURT:


    s/ Craig B. Shaffer
United States Magistrate Judge