IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-01224-MSK-CBS

UNITED STATES OF AMERICA EX REL. BOBBY L. MAXWELL,

    Plaintiff,

v.

KERR-McGEE OIL & GAS CORPORATION,

    Defendant.
_____

## OPINION AND ORDER GRANTING MOTION FOR ENTRY OF JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Entry of Judgment **(# 313)**, the Defendant's response **(# 317)**, and the Plaintiff's reply **(# 319)**.[1]

The Court will not attempt to repeat the complicated facts and even more complicated procedural history of this action; to the extent necessary, the Court deems the factual recitation in Judge Blackburn's September 30, 2009 Order **(# 304)** incorporated herein.

In summary, Relator Bobby Maxwell brought this suit on behalf of the United States, pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging that the Defendant filed false royalty reports with the Minerals Management Service ("MMS") concerning oil and gas leases on government land from 1999 to 2003. The false reports were discovered by Mr. Maxwell in his role as an auditor with the MMS, as part of an audit of the Defendant's royalty statements. Although the MMS disagreed with Mr. Maxwell's conclusions that the Defendant's royalty

---

[1]The Plaintiff also filed a Motion for Hearing **(# 318)** on the Motion for Entry of Judgment. The Motion for Hearing is denied as moot.

statements constituted false claims, Mr. Maxwell elected to bring this action as a Relator. The case was tried to a jury in January 2007, and the jury returned a verdict in favor of the Plaintiff, awarding $7,555.886.26 in damages. It appearing that the parties have exhausted post-trial proceedings at the District Court level, the only matter remaining is the entry of judgment. The parties disagree with regard to several components of the judgment, and have fully set forth their positions with regard to those matters. The Court will address each component in turn.

**A. Damages multiplier**

The False Claims Act presumptively provides for treble damages upon a finding of a violation. 31 U.S.C. § 3729(a)(1).

However, the Act provides for a more lenient penalty – a doubling of damages – where three criteria are met: (I) the violator "furnished officials of the United States responsible for investigating false claims violations with all information known to such person . . . within 30 days after the date on which the defendant first obtained the information"; (ii) that the person "fully cooperated with any Government investigation of such violation"; and (iii) that at the time the violator provided the information, the violator "did not have actual knowledge of the existence of an investigation into such violation." 31 U.S.C. § 3729(a)(2).[2]

There is relatively little published authority applying § 3729(a)(2), and no authority addressing the details of its interpretation or operation. Because the provision is in derogation of the general rule requiring trebled damages, it appears appropriate to require the Defendant to bear the burden of proving that all three criteria are met, rather than requiring the Plaintiff to disprove the Defendant's entitlement to a lesser multiplier. Likewise, in the absence of argument

---

[2]This section of the statute was reorganized in 2009 but, for purposes herein, not materially altered. The prior version of the statute included factors allowing only a doubling of damages within and otherwise undifferentiated portion of subsection (a).

to the contrary, the Court assumes that the Defendant's burden is to be borne by a preponderance of the evidence, as opposed to some more exacting standard.

The first point of dispute between the parties concerns the first element's requirement that the Defendant have furnished information to "officials of the United States responsible for investigating false claims." The Plaintiff contends that the agency "responsible for investigating false claims" is the U.S. Department of Justice, and it is undisputed that the Defendant never communicated any information to that agency. The Defendant contends that the agency referenced in this element is the MMS, to whom the Defendant contends it promptly disclosed all of the relevant information about its royalty calculations.

No court has purported to determine which particular government "officials" must be notified in order to satisfy this portion of the statute.[3] The Court finds some guidance as to the meaning of "officials . . . responsible for investigating false claims" in the very next statutory section, 31 U.S.C. § 3730(a). That section states that "The Attorney General diligently shall investigate a violation under section 3729. If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General may bring a civil action under this section against the person." This language strongly suggests that the "official[ ] responsible for investigating false claims" is the Attorney General, not the agency to whom the false claim was presented.

The conclusion that a violator must make full disclosure of the relevant facts to the

---

[3]At best, *U.S. ex rel. Ervin & Assocs., Inc. v. The Hamilton Securites Group*, 370F.Supp.2d 18, 49 (D.D.C. 2005), appears to contemplate, in *dicta*, that disclosure to either the agency receiving the false claim or the Department of Justice might be sufficient. (Defendant accused of defrauding HUD not entitled to reduced multiplier because it "did not disclose the North Central problems to the HUD Office of Inspector General or Department of Justice, despite being aware that the Government was conducting an investigation into the note sales.")

Attorney General, not to the agency receiving the false claim, has a salutary purpose. If the violator could take advantage of the reduced multiplier simply by showing that it supplied all of the relevant information about the false claim to the agency upon which the claim was made, the reduced multiplier would be available in a large number of cases – arguably, including this one – where paperwork filed with the agency could, if scrutinized sufficiently, have revealed the existence of the false claim. Whether the false claim is a $ 700 toilet seat buried within a mountain of requisitions and purchase orders filed with the Defense Department, or, as here, a royalty miscalculated under a complex formula by virtue of a misstated extrinsic variable, the Defendant's construction of the § 3729(a)(2) would deem many violators to nevertheless fall within the safe harbor without undertaking any affirmative efforts to reveal to the Government the existence of their false claim beyond simply presenting that claim. This certainly cannot be the intention of the reduced multiplier, which was initially enacted as part of a bill "to <u>enhance</u> the Government's ability to recover losses sustained as a result of fraud." Senate Rep. 99-345, 1986 U.S.C.C.A.N. 5266, P.L. 99-562. (Emphasis added.) By contrast, a rule requiring the violator to promptly disclose the false claim to the Attorney General in order to claim the reduced multiplier offers an incentive for violators to voluntarily come forward and reveal false claims that might otherwise have gone undiscovered by the agency, and ensures that the reduced multiplier is applied in those "presumably few" cases where it is intended to have effect. *See Vermony Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 785 n. 16 (2000).

Thus, the Court finds that, in order to comply with § 3729(a)(2)(A), the Defendant must show that it furnished all the information it knew about the claim to the Attorney General or Department of Justice, not simply to the MMS. Because it is undisputed that the Defendant never communicated information about its claims to the Department of Justice, the Court finds

that the reduced multiplier of § 3729(a)(2)(A) does not apply here.

Accordingly, the judgment will require the Defendant to pay treble the amount of the jury's award – $ 22,667,658.78 – in damages pursuant to § 3729(a)(1).

**B. Amount and number of penalties**

31 U.S.C. § 3729(a)(1) also provides that a violator shall be subject to penalties of not less than $ 5,000 and not more than $ 10,000 (adjusted for inflation), for each of the false claim that was made. The parties' primary dispute on this point involves the number of claims that should be deemed to be subject to a penalty. The parties agree that the Defendant was permitted to file one consolidated monthly royalty report that, in turn, set forth the royalties owed from each of the 57 leases that the Defendant held. The Plaintiff contends that each miscalculated royalty from <u>each lease</u> included in each monthly report constitutes a separate false claim for purposes of imposing a penalty, for a total of 1,403 separate false claims. The Defendant contends that, regardless of the accuracy of the various components contained within it, only the consolidated monthly filing itself constituted the false claim, and thus, penalties should be imposed only for the 48 monthly reports that were filed that contained one or more royalty miscalculations.

Both parties have cited to various precedent for the proposition that the penalty should be calculated as they urge. For the Plaintiff, the key cases are *U.S. ex rel. Koch v. Koch Industries, Inc.*, 57 F.Supp.2d 1122, 1124-27 (N.D.Ok. 1999), *citing U.S. v. Bornstein*, 423 U.S. 303, 309-13 (1976).

In *Bornstein*, an entity named Model entered into a contract with the government to supply radio kits meeting certain specifications. Model subcontracted with an entity called United to supply certain specified parts for the kits, but United instead supplied inferior parts,

misrepresenting their quality to Model. Model unwittingly provided the defective kits to the Government, and when the Government discovered the kits' defects, it recovered certain sums from Model and brought suit under the False Claims Act against United. One of the questions ultimately rising to the Supreme Court was the question of how many violations warranting separate statutory penalties occurred – United supplied 21 boxes of inferior parts to Model via 3 separate shipments and invoices, and Model, in turn, unwittingly sent 35 false invoices to the Government for the defective kits. Phrasing the statutory penalty question as "whether [United] should be liable for each claim submitted by [Model] or whether it should be liable only for certain identifiable acts that it itself committed," the Court first rejected an argument that only one penalty – reflecting the single contract between Model and the Government – was the proper measure. *Id.* at 310-11. Next, the Court rejected the argument that the proper measure was the number of false claims (35) inadvertently submitted by Model, explaining that "The Act, in short, penalizes a person for his own acts, not for the acts of someone else," and that United had no knowledge or control over the number of invoices that Model sent the Government. *Id.* at 312. Instead, the Court concluded that United was responsible for 3 statutory penalties, reflecting the three false shipments of parts it knowingly made to Model. *Id.* at 313.

The reasoning of *Bornstein*, guided the court in *Koch*. There, the claimant purchased oil from a number of federal leases, requiring it to make royalty payments on those purchases to the MMS. The claimant falsified certain data in documents called "run tickets," "tank strapping reports," and "meter prover reports" in an effort to reduce the amount of royalties owed. The District Court's decision addresses, among other things, "which of [the claimant's] acts constitutes separate, individual violations . . . for which a civil penalty must be imposed." 57 F.Supp.2d at 1124. The relator took the position that each falsified run ticket, tank strapping

report, or meter proving report constituted a separate violation for penalty purposes, while the claimant contended that a penalty could be imposed only for each consolidated monthly royalty report. *Id.* at 1125. The Magistrate Judge disagreed with both positions, stating that "a penalty should be imposed in connection with [each] lease," not each individual false line item and not simply each monthly report. *Id.* at 1125. Evaluating both parties' objections to the Magistrate Judge's conclusion, the District Court relied on *Bornstein* to reject the argument that each false line item constituted a separate violation, equating the false run ticket, tank strapping report, and meter proving report to "the false tube markings and false packing lists created by United in furtherance of its fraud," not to the invoices that ultimately determined the number of penalties. *Id.* at 1126. At the same time, the court also rejected the argument that the penalty applied only to the consolidated monthly report, finding that "the three false invoices in *Bornstein* are most closely analogous to the false lease totals" that are aggregated in the monthly royalty report, and that "the fact that information relating to several leases was collected together in one submission form . . . does not transform the [claimant's] multiple acts of fraud" into a single act. *Id.*

The Defendant here relies primarily on *U.S. v. Krizek*, 111 F.3d 934 (D.C. Cir. 1997), and various others, for the proposition that the number of penalties should be measured by the number of consolidated forms submitted. In *Krizek*, the claimant was a doctor who submitted invoices to the Government for services provided to Medicare patients. For each patient, the doctor submitted a form to the Government, setting forth code numbers representing the various services provided to the patient. A Special Master ultimately determined that 1,149 codes were falsely entered on an unknown number of patient forms, and the trial court thus imposed 1,149 separate penalties. The doctor appealed, arguing that "the District Court erroneously treated each [ ] code as a separate 'claim' for purposes of computing civil penalties [and] the claim, in

this context, is the [form itself] even when the form contains a number of [false] codes." *Id.* at 938. The Court of Appeals agreed, explaining that "the gravamen of [cases like *Bornstein*] . . . asks 'with what act did the defendant submit his demand or request and how many such acts were there?" *Id.* at 939. "The question turns," it said, "not on how the government chooses to process the claim, but on how many times the defendant made a 'request or demand.'" *Id.* at 940. Looking at the forms submitted by the doctor, the court noted that the individual codes "function in this context as a type of invoice used to explain how the defendant computed" the single-line demand for balance due shown on the form. *Id.*

Having considered the rationale of the various cases cited by the parties, this Court concludes that the monthly consolidated form filed by the Defendant acts as the "claim" for which penalties are assessed. The Court finds persuasive *Krizek*'s interpretation of the False Claims Act's definition of "claim" – the unit by which statutory penalties are imposed – as being "any request or demand . . . presented to" the Government. 31 U.S.C. § 3729(b)(2). *Krizek* properly recognizes that determining whether how many "claims" are made is done by examining the document submitted to the Government (or, in cases like *Bornstein*, submitted to the contractor with the Government) and ascertaining how many "requests or demands" are contained therein. *Id.* at 940. Here, the consolidated form submitted by the Defendant to the MMS aggregates a large volume of data, but ultimately reduces down to a single "Net Payment" field for each form, and the Defendant tendered only a single payment to the MMS each month, encompassing royalties owed for all 57 leases. This single payment was the false "claim" giving rise to liability each month, and thus, the statutory penalty should be imposed only with regard to the monthly report.

In this respect, this Court disagrees with *Koch*'s analysis. The key to *Koch*'s conclusion

– that "the three false invoices in *Bornstein* are most closely analogous to the false lease totals" included in the consolidated report – is not supported by any clear explanation justifying that conclusion. If, as *Koch* suggests, the report of each individual lease's output is the equivalent of the invoices in *Bornstein*, there is no apt comparator for the consolidated report itself – a "super-invoice" of sorts. To the contrary, it appears to this Court that each invoice – "an itemized list of goods or services furnished . . ., usually specifying the price and terms of sale," *Black's Law Dictionary,* 7th Ed. at 833 – in *Bornstein* is comparable to the consolidated monthly report filed by the Defendant. Both documents itemize the costs or price of each individual component identified therein, and aggregate a total amount payable in satisfaction of the entirety of the document's itemized contents. In making its monthly payments to the MMS, the Defendant did not send 57 separate checks, one for each lease reported in the monthly form; it sent one check, equivalent to one "claim," applicable to the aggregate of all of the leases.[4] By all logic, then, the single report aggregating all leases is the "claim" giving rise to statutory penalties.

The parties agree that, measured by this metric, 48 monthly reports are subject to the statutory penalty. It appears to be undisputed that, adjusted for inflation, the statutory penalties

---

[4]The flaw in *Koch*'s line of reasoning is demonstrated by the position taken by the Plaintiff here. Mr. Maxwell calculated compared the proper amount of royalty payments owed for each lease in each month, and excluded those instances in which the Defendant "provided a royalty value that was greater than my calculation [of what was owed for that lease in that month]." In doing so, Mr. Maxwell simply ignores 99 situations in which the Defendant overpaid royalties to the MMS for the lease in question.

This approach can yield unjust consequences when statutory penalties are to be imposed. Assume the Defendant had only three leases, for which it reported royalties on a consolidated form. In a given month, the Defendant undererports royalties on Leases A and B by $50 each, but overreports royalties on Lease C by $ 175. Under *Koch*, the Defendant can be said to have made two false claims to the MMS, and is subject to two statutory penalties, even though, in the aggregate, the Government actually received more money than it was entitled to. If, on the other hand the proper inquiry is whether the consolidated form itself resulted in a remittance to the MMS of less than it was entitled, there is no harm to the Government from the Defendant's mistake and no basis to penalize the Defendant.

range from $ 5,500 to $ 11,000 per claim. The Plaintiff requests that the Court impose the maximum penalty per violation, because "the evidence against [the Defendant] was overwhelming," that "at trial, [the Defendant] attempted to deny and minimize these clear facts," and because "even today, [the Defendant] attempts to obtain a technical win," seeking judgment as a matter of law on issues such as Mr. Maxwell's standing.

Without attempting to revisit the entirety of the trial or reconsider the evidence weighed by the jury, this Court finds that the evidence of misconduct by the Defendant was far from "overwhelming." Most notably, the MMS itself, having had the opportunity to review Mr. Maxwell's conclusion that the Defendant was underpaying royalties, disagreed with Mr. Maxwell's conclusion and took the position that the Defendant was in compliance with its obligations, and despite the Plaintiff's representation that trial evidence "established that [the Defendant] had withheld important information from the MMS," the MMS persisted in its position post-trial, going so far as to post a statement on its website expressing its disagreement with the jury's verdict. Similarly, the Government refused to intervene in this action. One might draw a number of inferences from the Government's abstention in this action, but one plausible inference is that the Government did not share Mr. Maxwell's belief that the evidence was indeed "overwhelming."

Under the circumstances, the Court finds no particular reason to assess anything more than the minimum statutory penalty of $ 5,500 for each of the Defendant's 48 false claims. The total statutory penalty assessed is thus $ 264,000.

### C. Prejudgment interest

Mr. Maxwell argues that any judgment entered by this Court should include prejudgment interest. Both the Defendant and the Government point out that most courts have concluded that

prejudgment interest is not properly awarded in a False Claims Act case. *See U.S. v. Foster Wheeler Corp.*, 447 F.2d 100, 102 (2d Cir. 1971) (finding the damage multiplier "was chosen to make sure that the Government would be made completely whole" and an award of prejudgment interest was inappropriate); *see also Cook County v. U.S. ex rel. Chandler*, 538 U.S. 119, 130 (2003) (observing that "the [False Claims Act] has no separate provision for prejudgment interest"). Mr. Maxwell does not dispute that the weight of False Claims Act precedent is against him, but argues that prejudgment interest would be a regulatory remedy available to the MMS had it sought address the royalty underpayments administratively, and thus, the Court should treat such prejudgment interest as an item of damages. The Court declines to do so. This case was brought pursuant to the False Claims Act, and that Act defines the scope of available remedies. Because the Act does not provide for an award of prejudgment interest, and for the same reasons stated in cases such as *Foster Wheeler*, the Court finds that an award of prejudgment interest is incompatible with the damages multiplier already applied.

### D. Attorney's fees and costs

Mr. Maxwell notes that 31 U.S.C. § 3730(d)(2) provides for an award of reasonable attorney's fees and costs to a successful party. The Defendant does not dispute that such an award is appropriate under the statute. Accordingly, Mr. Maxwell shall make his application for fees and costs within 14 days of the date of this Order.

### E. Mr. Maxwell's bounty

31 U.S.C. § 3730(d)(2) provides that a Relator is entitled to a bounty, in "an amount the court decides is reasonable." In cases such as this one, where the Government declined the opportunity to intervene, the bounty must be set between 25% and 30% of the proceeds of the action. The Government elected not to respond to Mr. Maxwell's request for a bounty, stating

that the bounty determination "is not included in the judgment in the normal course," and that "the government reserves its rights with respect to the relators entitlement to and appropriate size of a share." The Court finds that, whether or not the bounty is properly included in a judgment, there is no utility in postponing determination of Mr. Maxwell's entitlement to a bounty and inviting even more briefing and delay in this already aged case. There being no express opposition to his request, the Court finds that a bounty is properly awarded to Mr. Maxwell under § 3730(d)(2). Neither party has addressed any argument as to what amount between 25% and 30% the Court should choose and why that amount is appropriate, and in the absence of argument warranting a higher bounty, the Court finds that Mr. Maxwell is entitled to 25% of the proceeds of this action.

### F. Excessive fines

The final issue to be resolved is the Defendant's argument that the total amount of the judgment – here, $ 22,931,658.78 – violates the Eighth Amendment's "excessive fines" clause.

The parties disagree as to whether False Claims Act judgments – including trebled damages and statutory penalties – are subject to Eighth Amendment scrutiny. Although some cases have disposed of this issue with somewhat perfunctory analysis, it appears appropriate for the Court to entertain an Eighth Amendment review of the total judgment. *See e.g. U.S. ex rel. Shutt v. Community Home and Health Care Servs.*, 305 Fed.Appx. 358, 360 (9th Cir. 2008) (unpublished) (performing excessive fines analysis on False Claims Act judgment); *U.S. v. Eghbal*, 548 F.3d 1281, 1285 (9th Cir. 2008) (same); *U.S. v. Borseau*, 531 F.3d 1159, 1173 (9th Cir. 2008).

The excessive fines clause is implicated when the punishment imposed is "grossly disproportional to the gravity" of the offense. *Cooper Industries, Inc, v. Leatherman Tool Corp.*,

532 U.S. 424, 434 (2001). In assessing disproportionality, the Court does not engage in a rigid mathematical test, but rather, considers (I) the degree of the defendant's reprehensibility or culpability; (ii) the relationship between the penalty and the harm caused; and (iii) the sanctions imposed in other cases for comparable misconduct. Turning first to the Defendant's culpability, the Court observes that, notwithstanding the MMS' opinion that no royalties were owing, the jury disagreed and concluded that the Defendant had defrauded the Government of more than $ 7 million in unpaid royalties. The scheme involved dozens of leases and continued over an extended period of time. In light of these facts, the Court cannot say that the Defendant's actions were sporadic, isolated, or minimal, such that a significant penalty would be disproportionate to the gravity of the offense.

The remaining two factors – the relationship between the penalty and the harm caused, and the sanctions imposed for comparable misconduct – are somewhat affected by the peculiar nature of the False Claims Act. Far and away, the largest component of the judgment against the Defendant consists of the damages multiplier that is statutorily compelled under the Act. Congress has expressly concluded that "the relationship between the penalty and the harm caused" should be mechanically set at 3:1, and that ratio is uniformly applied to nearly every instance of violations of the Act. While it is cognizable that, in fixing a firm damages multiplier in the Act, Congress created a situation in which application of the multiplier might nevertheless constitute an unconstitutional fine under the Eighth Amendment, the Court would be somewhat reluctant to declare it so here. The Supreme Court has already observed that the False Claims Act's remedial scheme, albeit partially "punitive" in character, has "a compensatory side, serving remedial purposes in additional to punitive objectives." *Cook County*, 538 U.S. at 130. Thus, "some liability beyond the amount of the fraud is usually necessary to compensate the

Government completed for the costs, delays, and inconveniences occasioned by fraudulent claims." *Id.* Among other things, the multiplier is intended to offset the costs of detection and investigation, to provide room for the Government to offer a bounty to Relators to induce action, and to compensate for the absence of prejudgment interest, among other things.[5] *Id.* at 131.

Here, the Court finds that although the relationship between the harm caused by the Defendant and the ultimate penalty imposed is only slightly more than the 3:1 ratio set by Congress and implicitly approved by the Supreme Court in *Cook County*. The Defendant has not come forward with evidence showing that others found to have defrauded the Government of more than $ 7 million have been spared the pain of the multiplier, and thus, the Court cannot say that the trebled damages and (comparatively small) statutory penalty render the judgment against the Defendant disproportionate to that imposed on comparable parties. Accordingly, the Court concludes that the judgment imposed herein does not offend the Eighth Amendment.

---

[5]For example, the Court observes that the prejudgment interest demanded by Mr. Maxwell – which this Court finds is subsumed within the Government's entitlement to a damage multiplier – alone would have amounted to more than $ 2 million, or approximately 10% of the full judgment amount.

For the foregoing reasons, the Plaintiff's Motion for Entry of Judgment **(# 313)** is **GRANTED IN PART**, insofar as the Court will enter judgment consistent with the discussion herein. The Plaintiff's Motion for Hearing **(# 318)** is **DENIED** as moot.

Dated this 16th day of September, 2010

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge