IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-01224-MSK-CBS

UNITED STATES OF AMERICA EX REL. BOBBY L. MAXWELL,

    Plaintiff,

v.

KERR-McGEE OIL & GAS CORPORATION,

    Defendant.

_____

**OPINION AND ORDER GRANTING, IN PART, APPLICATION
FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND COSTS**
_____

**THIS MATTER** comes before the Court pursuant to the Relator's Application for Award of Attorneys' Fees and Expenses and Costs (**# 340**), the Defendant's response (**# 355**), and the Relator's reply (**# 356**).

## FACTS

Relator Bobby L. Maxwell brought this suit on behalf of the United States, pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, alleging that Defendant Kerr-McGee Oil & Gas Corp. filed false royalty reports with the Minerals Management Service ("MMS") concerning oil and gas leases on government land from 1999 to 2003. The false reports were discovered by Maxwell in his role as an auditor with the MMS, as part of an audit of the Defendant's royalty statements. Although the MMS disagreed with Maxwell's conclusions that the Defendant's royalty statements constituted false claims, Maxwell elected to bring this action as a relator.

The case was tried to a jury in January 2007, and the jury returned a verdict in favor of

the Plaintiff, awarding $7,555.886.26 in damages. On September 16, 2010, the Court entered judgment in favor of the Plaintiff and against the Defendant in the amount of $22,931,658.78, plus costs pursuant to Fed. R. Civ. P. 54(d)(1). (**# 333**.) That amount was based on a trebled damage award, totaling $22,667,658.78, and statutory penalties of $264,000, both awarded pursuant to 31 U.S.C. § 3729(a)(1). (**#332, at 2-10**.) Both parties have appealed from the judgment (**# 342, 346**), and those appeals are pending in the Tenth Circuit.

In his pending application, Maxwell seeks $2,178,632.25 in attorneys' fees pursuant to 31 U.S.C. § 3730(d)(2) for the work of the three law firms that have represented him during this action. (**# 340, at 3-5**.) He also seeks an enhancement of one-third of this amount to account for the risk of non-payment given that his attorneys were working on a contingent fee basis. (***Id.* at 5-7**.) Third, he seeks recovery of his attorneys' expenses in the amount of $109,341.79 pursuant to U.S.C. § 3730(d)(2). (***Id.* at 9-10; # 345**.)[1] Finally, Maxwell seeks recovery of $329,186.13 in fees and expenses for his own work as an expert witness in the action. (**#340, at 10-11**.)

The Defendant opposes the application, arguing that the attorneys' fees award should be reduced to $1.1 million to account for (1) the fact that the attorneys' fees sought are grossly disproportionate to the amount that Maxwell would recover; and (2) the limited degree of success achieved by Maxwell in the action. (**# 355, at 4-10**.) The Defendant bases both arguments on the fact that the contingency fee agreement between Maxwell and his attorneys entitles the attorneys to recover *both* a 55 percent contingency fee *and* any attorneys' fees award under 31 U.S.C. § 3730(d)(2). (*See id.* **Ex. 1**.) The Defendant also argues against any enhancement of the fee award. (***Id.* at 10-15**.) Finally, the Defendant argues that expert fees and

---

[1] Maxwell originally sought $123,800.18 in expenses and costs (*see* **# 340**), but reduced the amount requested after the Clerk of the Court awarded costs (*see* **# 345**).

expenses are not recoverable under the FCA, and even if they are, Maxwell should not be able to recover his own expert fees and expenses in prosecuting the action. (*Id.* at 15-18.)

## ANALYSIS

### I.     Jurisdiction

Although the judgment in this action has been appealed, this Court retains jurisdiction to rule on this application for attorneys' fees, expenses, and costs. *See McKissick v. Yuen*, 618 F.3d 1177, 1196 (10th Cir. 2010) ("[A]n award of attorney fees . . . is perhaps the paradigmatic example of a collateral issue a district court may entertain after an appeal has been taken to th[e] court [of appeals]."); *Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 451 F.3d 1097, 1101 n.2 (10th Cir. 2006) ("If fees are sought in the district court on the basis of a judgment that has been appealed, the court of appeals and district court each have jurisdiction over the distinct matters before them."); *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) ("Although filing notice of appeal generally divests the district court of jurisdiction over the issues on appeal, . . . [a]ttorney's fees awards are collateral matters over which the district court retains jurisdiction.").

### II.    Attorneys' Fees

31 U.S.C. § 3730(d)(2) provides that, in a *qui tam* action in which the United States does not intervene, a prevailing relator shall receive his reasonable attorneys' fees and costs. 31 U.S.C. § 3730(d)(2). *See also United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1172 (10th Cir. 2009) (stating that the statute provides for an award of attorneys' fees and costs to a prevailing relator). The "lodestar" – the reasonable number of hours spent multiplied by a reasonable hourly rate – is the "presumptively reasonable" attorneys' fee. *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992). *See also United States*

*ex rel. Ritchie v. Lockheed Martin Corp.*, No. 04-cv-01937, 2007 WL 1795865 (D. Colo. June 21, 2007) (using lodestar calculation in FCA case).  However, "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010).  "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge . . . ."  *Id.* at 1676.

Maxwell has submitted declarations and exhibits from his attorneys detailing the number of hours they spent on the action and their hourly rates.  (**# 340, Attachs. 1-2, 4-7**.)  Based on these figures, Maxwell seeks an award of $1,206,898.25 for the work of The Law Firm of Michael S. Porter, $745,542.50 for the work of Richard C. LaFond P.C., and $226,191.50 for the work of Reilly Pozner LLP, totaling $2,178,632.25.  (**#340, at 5**.)  The Defendant does not specifically dispute the reasonableness of the number of hours spent by Maxwell's attorneys, or the reasonableness of their hourly rates.  (*See generally* **# 355**.)  Thus the Court finds both the hours and the hourly rates as reasonable.

The Defendant argues that the total amount of fees sought is unreasonable, however, for two reasons.  First, the Defendant contends that they are excessive when considered in light of the contingent fee agreement between Maxwell and his attorneys.  (*Id.* **at 4-5**.)  The contingent fee agreement between Maxwell and his attorneys would entitle the attorneys to 55 percent of the entire recovery and to an attorney fee award under 31 U.S.C. § 3730(d)(2).  (*Id.* **Ex. 1**.)  In essence, the Defendant argues that recovery of both sums is a windfall to Maxwell's attorneys.  In addition, the Defendant also contends that the fees sought are unreasonable because the amount sought is disproportionate to the degree of success achieved by Maxwell in the action.  (*Id.* **at 6-10**.)  The Court addresses each argument in turn.

The existence of a contingent fee agreement between Maxwell and his counsel does not justify reducing the lodestar amount of attorneys' fees owed by the Defendant under 31 U.S.C. § 3730(d)(2). This statute mandates the award of attorney fees as part of a fee-shifting policy. *See United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1035 (6th Cir. 1994) ("The FCA *qui tam* statutes [] contain a fee-shifting provision that aims at inducing 'whistleblowers' to step forward and attorneys to pursue such actions."); *United States ex rel. Bahrani v. Conagra, Inc.*, No. 00-cv-1077, 2009 WL 2766805, at *3 (D. Colo. Aug. 28, 2009), *vacated in part on other grounds*, 624 F.3d 1275 (10th Cir. 2010) ("In crafting the fee shifting provisions of the FCA, Congress used the term 'shall' to mandate an award of reasonable expenses, attorneys' fees and costs to a person who settles a claim or recovers a civil penalty and damages on behalf of the government."). By its nature, fee-shifting is designed to shift all of the costs (including attorney fees) to the loser in an action. The fact that the winner's attorneys receive compensation from another source is irrelevant to the fee award.

The Supreme Court recognized this feature when addressing another fee-shifting statute, 42 U.S.C. § 1988, in *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990). There it observed that the statute:

> controls what the losing defendant must pay [in attorneys' fees], not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the "reasonable attorney's fee" that a defendant must pay pursuant to a court order. Section 1988 itself does not interfere with the enforceability of a contingent-fee contract.

*See also Quesada v. Thomason*, 850 F.2d 537, 543 (9th Cir. 1988) (stating that a defendant obligated to pay fees under 42 U.S.C. § 1988 "should not benefit from the private [contingency fee] agreement by being permitted to pay anything less than . . . an otherwise reasonable lodestar fee"); *Certain v. Potter*, 330 F. Supp. 2d 576, 589 (M.D.N.C. 2004) ("Defendant's argument that

[Plaintiff's attorney] might ultimately receive both the fee award and a contingency fee is not relevant to the question before this Court, that is, the determination of the reasonable fee award that *Defendant* must pay to *Plaintiff* . . . .") (emphasis in original).

The contingent fee agreement between Maxwell and his attorneys specifically envisions that the attorneys may choose to reduce the contingent fee if a statutory fee is awarded. (*See* **# 355, Ex. 1 ¶ 6**.) Whether Maxwell's attorneys will enforce their right to collect both the contingent fee as well as a statutory award, reduce it or waive it altogether is beyond the purview of the issues before the Court. Neither Maxwell nor his attorneys' actions with regard to each other impact the Defendant's statutory obligation to pay reasonable attorney fees under 31 U.S.C. § 3730(d)(2).

The Defendant's second argument is that Maxwell's degree of success in this action should result in a reduction of the award of attorneys' fee award. This argument is also unpersuasive.

There is no doubt that in cases where a plaintiff prevails on only some of its claims, that an attorney fee award should correspond to the successful result. Again, applying an analogous statute, in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court held that

> the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440. In *Hensley*, the plaintiff prevailed on certain claims and lost on others, but the district court awarded attorney fees without taking into amount fees incurred on the unsuccessful claims.

*See id.* at 428-29, 438-39.  This was error; the Supreme Court vacated and remanded for consideration of the relationship between the extent of success and the amount of the fee award. *See id.* at 438-39.

Here, there was one claim for relief.  On that claim, the jury awarded some but not all of the damages requested.  It awarded $7.56 million in damages, which was statutorily trebled to $22.67 million, then added to statutory penalties of $264,000, for a total of $22.93 million.  The Court does not find Maxwell to have enjoyed only "partial success" simply because the jury did not award all the damages sought.  Nor does it find Maxwell to have enjoyed only "partial success" just because the Court disagreed with Maxwell's method for calculating the civil penalties.  Both situations affected the amount of recovery, but not the legal merit of Maxwell's claims.  *See id.* at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

The requested $2,178,632.25 in attorneys' fees is approximately 28.8 percent of the damages awarded by the jury and 9.5 percent of the total award.  This fact distinguishes this case from the cases cited by the Defendant, in which courts reduced the attorneys' fees award because actual damages were nominal or at least much smaller than the amount of attorneys' fees sought. *See United States ex rel. Bahrani*, No. 00-cv-1077, 2009 WL 2766805, at *2, *7 (D. Colo. Aug. 28, 2009), *vacated in part on other grounds*, 624 F.3d 1275 (10th Cir. 2010) (where total damage award was $27,822 but the plaintiff's attorneys sought $3.45 million in attorneys' fees, court awarded fees in the amount of one-third of total damage award); *Caputo v. Prof'l Recovery Servs., Inc.*, No. 00-4208, 2004 WL 1503953, at *1, *10 (D. Kan. June 9, 2004) (where final settlement was $15,000 but the plaintiff's attorneys sought $99,352 in attorneys' fees, court

reduced fee award by 20 percent to $79,481).

For these reasons, the Court awards Maxwell the requested amount of $2,178,632.25.

## III.   Enhancement of Attorneys' Fee Award

Maxwell's application also seeks an enhancement of one-third of the lodestar amount "to account for the risk of non-payment given his attorneys' contingent fee." (**# 340, at 5**.)

In *City of Burlington v. Dague*, 505 U.S. 557 (1992), the Supreme Court held that an enhancement of the lodestar figure to account for the contingent nature of the representation is impermissible under environmental fee-shifting statutes. United States Circuit Courts have read *Dague* broadly as being applicable to other fee-shifting statutes. *See, e.g.*, *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, No. 99-2172, 2000 WL 1133131, at *2 (10th Cir. Aug. 10, 2000) (in 42 U.S.C. § 1983 action, Court applied *Dague* and stated, "[e]nhancements for contingency are not permitted"); *Shipes v. Trinity Industries*, 987 F.2d 311, 323 (5th Cir. 1993) (in Title VII action, court applied *Dague* and stated, "we now hold that the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees awarded to prevailing plaintiffs under traditional fee-shifting provisions").

Although this line of reasoning suggests that the contingent nature of the case might not be a relevant factor in making an attorney fee award in this case, this Court need not reach that question. Because the contingency fee agreement allows Maxwell's attorneys to recover both a 55 percent contingent fee and a statutory attorney fee award under 31 U.S.C. § 3730(d)(2), there is no need to compensate Maxwell's counsel for risk associated with undertaking representation in this matter - Maxwell and his attorneys have already done so.[2]

---

[2] The Court recognizes that it has declined to consider the existence of the contingency fee agreement in awarding the lodestar, but has considered the existence of the contingency fee agreement in declining to award an enhancement of the lodestar. *See Homeward Bound, Inc.*,

**IV.     Litigation Expenses**

Maxwell also seeks recovery of (1) his attorneys' expenses in prosecuting this action, which includes payments to one of his expert witnesses, Peter Ashton; and (2) Maxwell's own fees and expenses in serving as an expert witness in this action.  31 U.S.C. § 3730(d)(2) provides that a prevailing relator may recover "an amount of reasonable expenses which the court finds to have been necessarily incurred . . . .  All such expenses . . . shall be awarded against the defendant."  *See also Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 541 (10th Cir. 2000) (stating that a relator who successfully brings an FCA action is entitled to reasonable expenses).

**A.     Non-Expert Expenses**

First, the Court notes that a portion of the expenses sought to be recovered by Maxwell appear to be unrelated to expert witness fees.  Specifically, $13,264.51 of the expenses of The Law Firm of Michael Porter, $10,332.62 of the expenses of Richard C. LaFond P.C., and all the expenses of Reilly Pozner LLP – $7,215.94.  (**# 340, Attachs. 1, 3, 4-6, 8; # 345, Attachs. 1-2**.)  These expenses total $30,813.07.  They are not tied to any expert witness, but the Defendant does not challenge them.  Therefore, the Court will accept them as reasonable, and so award them.

**B.     Expenses Attributable to Peter Ashton**

Expenses of $78,528.72 paid by the Law Firm of Michael Porter and Richard C. LaFond P.C. are attributable to the "expert services of Peter Ashton."  (**# 340, Attachs. 1, 3, 4; # 345, Attachs. 1-2**.)  Although, the Defendant does not specifically dispute the reasonableness of Mr. Ashton's expert witness fees, the Defendant argues that expert fees are not recoverable under 31

---

963 F.2d at 1355 (stating that the lodestar is the "presumptively reasonable" attorneys' fee); *Kenny A. ex rel. Winn*, 130 S. Ct. at 1673 (emphasizing that enhancements of the lodestar may only be awarded in "rare and exceptional circumstances") (internal quotation marks omitted).

U.S.C. § 3730(d)(2).  (**#355, at 15-16**.)

The Defendant relies on *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991).  In *Casey*, the Supreme Court held that expert witness fees were not recoverable as a part of "a reasonable attorney's fee" under (what is now a former version of) 42 U.S.C. § 1988.  *See id.*  However, unlike the version of 42 U.S.C. § 1988 considered in *Casey*, 31 U.S.C. §3730(d)(2) expressly lists "reasonable expenses" as a recoverable item distinct and separate from "reasonable attorneys' fees and costs."  31 U.S.C. § 3730(d)(2) (a prevailing relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs").  *Casey* is inapplicable to a statute which expressly lists "expenses" as separately recoverable from "attorneys' fees."  *See United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 46 F. Supp. 2d 546, 567 (E.D. La. 1999), *vacated on other grounds*, 224 F.2d 486 (5th Cir.2001) (stating that "reasonable expenses" under the FCA includes expert fees).  Since *Casey* was decided, courts have awarded expert witness fees under the FCA.  *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 601 F. Supp. 2d 45, 59-60 (D.D.C. 2009), *vacated in part on other grounds*, 2011 WL 1833243 (D.C. Cir. May 12, 2011); *United States ex rel. Abbott-Burdick v. University Medical Associates*, No. 2:96-1676-12, 2002 WL 34236885, at *23-*24 (D.S.C. May 23, 2002).  The Court therefore awards Maxwell the $78,528.72 in expenses attributable to the expert fees of Peter Ashton.

      **C.**     **Relator Maxwell's Expert Fees and Expenses**

Maxwell himself also served as an expert witness in this action, and seeks to recover the expert fees and expenses attributable to his own work.  The Court declines to award Maxwell his expert fees and expenses because he was prosecuting this action and there is no showing that he reasonably anticipated being compensated as an expert witness.  *See Barber v. Ruth*, 7 F.3d 636,

646 (7th Cir. 1993), *superceded on other grounds by rule*, Fed. R. Civ. P. 30(b) ("As a general rule, parties may not normally collect witness fees."); *Bowling v. Hasbro, Inc.*, 582 F. Supp. 2d 192, 209 (D.R.I. 2008) ("Parties are generally not awarded witness fees."); *Earth Island Inst. v. Christopher*, 942 F. Supp. 597, 608 (Ct. Int'l Trade 1996), *vacated on other grounds*, *Earth Island Institute v. Albright*, 147 F.3d 1352 (Fed. Cir. 1998) ("[T]here is also no showing that, if Earth Island Institute and Todd Steiner were in fact in expert support of their counsel, as opposed to merely intentionally-conspicuous parties to this litigation, they either expected to be (or have been) paid for that expertise by counsel. In the absence of that kind of actual attorneys' expense, there can be no court-ordered reimbursement.").

For the foregoing reasons, the Relator's Application for Award of Attorneys' Fees and Expenses and Costs (**# 340**) is **GRANTED IN PART**. The Court awards Maxwell $2,178,632.25 in attorneys' fees and $109,341.79 in expenses under 31 U.S.C. § 3730(d)(2).

Dated this 2nd day of June, 2011

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge